Escolastico DE LEON–GRANADOS, Isais Profeta de Leon–Granados, and Armenio Pablo–Calmo on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ELLER & SONS TREES, INC. and Jerry Eller, Defendants.

No. 1:05–CV–1473–CC.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 7, 2008.

Alex R. Gulotta, Erin Trodden, Charlottesville, VA, Andrew H. Turner, Montgomery, AL, George Brian Spears, Law Office of Brian Spears, Kelley Bruner, Mary C. Bauer, Atlanta, GA, James M. Knoepp, Tim A. Freilich, Falls Church, VA, for Plaintiffs.

James Larry Stine, Paul Oliver, Wimberly Lawson Steckel Nelson & Schneider, Atlanta, GA, for Defendants.

## OPINION AND ORDER

CLARENCE COOPER, District Judge.

This matter is presently before the Court for consideration of Plaintiffs' Motion for Partial Summary Judgment Finding Employer Status of Defendant Jerry Eller [Doc. No. 173]; Defendants' Motion for Partial Summary Judgment [Doc. Nos. 190 & 195]; Plaintiffs' Motion for Partial Summary Judgment Related to Unreimbursed Expenses [Doc. No. 207]; Plaintiffs' Motion for Partial Summary Judgment Finding Violations of AWPA Recordkeeping Requirements [Doc. No. 208]; and Defendants' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 [Doc. No. 316].

## I. BACKGROUND[1]

Plaintiffs Escolastico De Leon–Granados, Isaias Profeta De Leon–Granados, and Armenio Pablo–Calmo (referred to herein as "Plaintiffs") filed the instant class action lawsuit against Defendants Eller & Sons Trees, Inc. (referred to herein as "Eller and Sons Trees") and Jerry Eller (referred to herein as "Mr. Eller" or "Eller") (collectively referred to herein as "Defendants"). Eller and Sons Trees is a business located in Franklin, Georgia, that provides forest reforestation (tree planting) and forestry services such as brush clearing, boundary marking, and chemical spraying. Most of its employees are engaged in tree planting, predominantly in the southern United States during the months of December, January, and February. This is arduous work, and Eller and Sons Trees cannot find enough employees in the United States to perform the work. As a result, most of the workers come from outside of the United States. The vast majority come from Guatemala, although some come from Mexico, Honduras, and Colombia. Eller and Sons Trees obtains employees through the H–2B visa program, which allows the legal, temporary or seasonal employment of alien, nonimmigrant employees. Mr. Eller is the president, sole corporate officer, and owner of Eller and Sons Trees. As will be explained *infra*, he is active in the company's day-to-day operations and maintains significant control over the company.

The named Plaintiffs are three migrant farmworkers who were employed in Defen-

---

1. The Court notes that the parties in this action have asserted voluminous facts in connection with the pending summary judgment motions totaling close to 400 pages, once responses to the facts have been considered. As such, specific facts pertaining to the specific legal issues presented will be addressed in Section V of the Order.

dants' forestry operations at various times since June 1, 1999. Plaintiffs contend that they were denied protections due them under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA"), and under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–71 (1999) ("AWPA"), during the various times they were employed by Eller and Sons Trees.

## II. MOTION FOR SANCTIONS

The Court first addresses Defendants' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 (the "Motion for Sanctions"). Defendants move the Court to impose sanctions against Plaintiffs for filing two separate Statements of Undisputed Material Facts totaling 96 pages and consisting of 731 separate facts. Defendants contend that a number of these facts misrepresented the evidence in the record, lacked sufficient evidentiary support, reflected conclusory or frivolous arguments, recited clearly disputed issues, or presented immaterial or irrelevant statements. Defendants maintain that Plaintiffs, as a consequence, have unreasonably and vexatiously multiplied the proceedings in this lawsuit. The Court disagrees.

Notwithstanding the Court's observation in footnote 1 of this Order regarding the number of facts that have been asserted by the parties, the Court finds that Defendants' Motion for Sanctions is groundless, as there is no basis for the Court to make the required finding that Plaintiffs acted in bad faith, vexatiously, wantonly, or for oppressive reasons. See Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir.2007) (setting forth the requirements for an award of sanctions pursuant

to 28 U.S.C. § 1927). Plaintiffs substantially complied with Local Rules 56.1B and made the process of sifting through the facts in this matter very efficient, especially given the complexity of the subject matter and the many issues raised. This Court's Local Rules obviously contemplate that some facts asserted will be the subject of disagreement and that parties will find some facts asserted by the opposing party objectionable, immaterial, and/or unsupported by the evidence. See LR 56.1B(2)(a)(2). NDGa. Thus, that Defendants took issue with many of the facts asserted by Plaintiffs comes as no surprise. The Court also notes, however, that many of Defendants' denials and disputes were groundless themselves. Moreover, Defendants, not Plaintiffs, largely failed to comply with Local Rule 56.1B(1), insofar as Defendants' facts were not numbered separately. Accordingly, and without further discussion or the need for a hearing, this Court denies the Motion for Sanctions.[2]

## III. SUMMARY OF SUMMARY JUDGMENT ISSUES

In Plaintiffs' pending partial summary judgment motions, Plaintiffs seek determinations that Eller was an employer of the Plaintiff class, that Defendants violated certain of the AWPA's record keeping requirements, and that Defendants are liable for certain unreimbursed expenses. Defendants seek partial summary judgment on several different issues arising under the FLSA and AWPA and specifically seek determinations that (1) the FLSA does not apply to alleged violations committed in foreign countries; (2) Plaintiffs have no

---

**2.** In summary fashion, Plaintiffs state in their Memorandum in Opposition to Defendants' Motion for Sanctions that they should be awarded fees and costs incurred in responding to the Motion for Sanctions. While the Court believes that Defendants' conduct in filing the Motion for Sanctions bordered on being vexatious, the Court will not require Defendants to pay Plaintiffs' fees and costs. However, the Court admonishes Defendants that similar conduct will not be tolerated by the Court in the future and will be sanctioned.

private right of action under the FLSA for alleged record keeping violations; (3) travel time before commencement of each day's work and after the end of work is not compensable under the FLSA; (4) reimbursement of visa expenses and costs incurred for travel from the home country to the United States to begin new work is not required for H–2B workers; (5) Defendants' reliance on Department of Labor regulations and written material provides an absolute defense to Plaintiffs' FLSA claim for reimbursement of inbound travel and visa expenses; (6) the two-year FLSA statute of limitations is applicable to the FLSA claims; (7) Defendants' payroll information meets the AWPA's requirements; (8) Plaintiffs are not entitled to any damages award in excess of the cap of $500,000.00 that Congress set on class claims under the AWPA; (9) there is no agreement or requirement to guarantee each worker at least 40 hours of work every week; (10) failure to pay relocation costs is not a violation of the AWPA; (11) requiring workers to leave a deed in Guatemala does not violate the AWPA; and (12) the statute of limitations for alleged AWPA violations is two years in Georgia.[3]

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the lack of any material dispute, after which the nonmoving party must show the existence of a genuine issue for trial if it is to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party is required to "go beyond the pleadings" and present competent evidence designating " 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment—there must be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by the evidence or created by evidence that is "merely colorable" or not "significantly probative." *Id.* at 249–50, 106 S.Ct. 2505. Similarly, a fact is considered material only if it is identified by the substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. 2505. "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," summary judgment shall be rendered. *Id.* at 249, 106 S.Ct. 2505. Stated differently, "[w]here the record taken as a while could not lead a rational trier of fact

---

**3.** Insofar as both parties appear to agree that no claims will be pursued in this case pursuant to the FLSA for record keeping violations and that no claims will be pursued as to compensation for travel time before the commencement of work or after the end of work, the Court will not discuss these issues in this Order. To the extent that these claims were once asserted by Plaintiffs or were understood by Defendants as being asserted by Plaintiffs,

the Court deems the claims abandoned and dismissed from the case. Defendants' Motion for Partial Summary Judgment Motion is hereby **DENIED as moot** with respect to these claims. Notwithstanding the foregoing, the Court understands that Plaintiffs will continue to pursue the claims set forth at pages 12 through 20 of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment.

to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citations and internal marks omitted).

## V. ANALYSIS OF SUMMARY JUDG- MENT MOTIONS AND ISSUES

After examining the summary judgment motions that have been filed by the parties, the Court concludes that there is a substantial overlap of issues. In the interest of judicial economy, the Court has decided to consider the cross motions jointly. The Court has thoroughly considered all arguments made and evidence cited by the parties. Further, as the summary judgment standard requires, the Court construes the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Indus.*, 814 F.2d 607, 609 (11th Cir.1987).

### A. *Employer Status of Defendant Jerry Eller*

■■ Plaintiffs seek entry of partial summary judgment as to Mr. Eller's status as an "employer," as defined by the FLSA, 29 U.S.C. § 203(g), and as defined by the AWPA, 29 U.S.C. § 1802(5). Liability under the FLSA and AWPA is predicated on the existence of an employer-employee relationship.[4] *Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir.1986). Under Eleventh Circuit precedent, the determination of employment status under the FLSA and the AWPA is a question of law. *Antenor v.*, 88 F.3d at 929. Thus, whether Mr. Eller was an employer of Plaintiffs, opt-in Plaintiffs, and the Rule 23(b)(3) class members is a proper issue for deci-

sion on summary judgment. *See Patel*, 803 F.2d at 634 & n. 1.

Supreme Court precedent holds that there may be several simultaneous employers of any individual worker. *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973). Plaintiffs in this action allege that they were simultaneously employed by Eller and Sons Trees and by Mr. Eller. Defendants maintain that Plaintiffs were employed only by Eller and Sons Trees. For the reasons set forth below, the Court holds as a matter of law that Plaintiffs, opt-in Plaintiffs, and the Rule 23(b)(3) class members were employed by both Eller and Sons Trees and Mr. Eller.

■■ "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637–38 (citations and internal marks omitted). The Eleventh Circuit has developed a disjunctive test to determine the FLSA liability of corporate officers. "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638. Here, Mr. Eller was extensively involved in the day-to-day operation of Eller and Sons Trees and therefore was the employer of Plaintiffs, opt-in Plaintiffs, and the Rule 23(b)(3) class members along with the company.

The undisputed facts in this matter disclose that Mr. Eller has been the President of Eller and Sons Trees since 1992. As President, Eller has been empowered to perform and exercise all duties of the

4. Insofar as the FLSA and the AWPA use the same definition of the term "employ," *see* 29 U.S.C. § 203(g) and 29 U.S.C. § 1802(5), an entity that employs workers under one of these statutes necessarily employs the workers for purposes of the other statute. *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir.1996).

Chairman of the Board. Currently, Eller is listed as the Chief Executive Officer, Chief Financial Officer and Secretary of Eller and Sons Trees. In addition to holding several corporate office positions, Eller is the owner of Eller and Sons Trees and is the company's sole shareholder. Courts in the Eleventh Circuit have regarded such sole ownership as significant in imposing personal liability under the FLSA. *Norton v. Groupware Int'l, Inc.*, No. 6:05–cv–1649–Orl–31DAB, 2007 WL 42955, at *3 (M.D.Fla. Jan.4, 2007) ("It is undisputed that Dean is the sole shareholder and President of Groupware. Given his position, it seems clear that Dean qualifies as Norton's employer.").

Defendants also concede facts showing that Eller commingles his personal assets with those of Eller and Sons Trees. In this regard, Eller and his wife own the Franklin, Georgia, land and office buildings that Eller and Sons Trees uses. Eller personally co-financed the construction of his Franklin, Georgia, office building with Eller and Sons Trees. Eller maintains in an affidavit that he charges Eller and Sons Trees rent, but Eller testified unequivocally during his deposition that he does not receive rent from Eller and Sons Trees for the use of the Franklin, Georgia, land and facilities he owns personally. He clarifies in his affidavit that Eller and Sons Trees sometimes could not make payment. Likewise, Eller and Sons Trees employee and recruiting agent Ismael Recinos sometimes resides rent-free on land owned by Eller in his personal capacity. Eller has taken personal loans from Eller and Sons Trees on multiple occasions. Specifically, Eller has taken at least between $200,000.00 and $300,000.00 in loans from Eller and Sons Trees. Eller is the only individual who must authorize the personal loans he takes from Eller and Sons Trees. While Eller surmised during his deposition that records of the loans were maintained

in the computer, no loan documents were created to memorialize the personal loans Eller took from Eller and Sons Trees. Further, there was no agreement to make regular payments on the personal loans Eller took from Eller and Sons Trees. Eller simply intended to repay Eller and Sons Trees for borrowed sums whenever he had the money to do so. Eller keeps no record himself of the amount of money he owes Eller and Sons Trees, and Eller could not state during his deposition how much money he currently owes Eller and Sons Trees. Significantly, Eller makes no distinction between the finances of Eller and Sons Trees and his own personal finances. As he stated in his deposition, "I mean, I'm Eller & Sons so I don't understand." (Deposition of Jerry Eller "Eller Dep." at 58.) Eller likewise expressed confusion as to whether he made charitable contributions from personal funds or from Eller and Sons Trees' corporate funds. Court have readily found corporate officers and owners liable under the FLSA where, as here, the lines between personal and business finances are blurred. *See Reich v. Circle C Investments*, 998 F.2d 324, 329 (5th Cir.1993); *Donovan v. Grim Hotel*, 747 F.2d 966, 972 (5th Cir.1984).

There likewise is no dispute that Mr. Eller also has control over all, or at least most, significant decisions at Eller and Sons Trees, although he sometimes delegates certain decisions to be made by others. As President of Eller and Sons Trees, Eller is "charged with the general and active management of the business of the Corporation." (Pls.' Ex. 91.) Eller has the authority to unilaterally change the way workers are paid by Eller and Sons Trees, and he is ultimately responsible for making sure that workers are paid legally. Eller decides who is authorized to bid on contracts for forestry work on behalf of Eller and Sons Trees. Eller makes

decisions about downsizing the operations of Eller and Sons Trees, and Eller has the ultimate responsibility for decisions about whether to sell Eller and Sons Trees, although he testified that he would discuss it with other people. In circumstances such as these, other courts have held a corporate officer liable as an employer. *See Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983) (holding corporate officers and board members liable where they were "actively engaged in the management, supervision and oversight of [the corporation's] affairs"); *Recinos–Recinos v. Express Forestry, Inc.,* No. Civ.A. 05–1355, 2005 WL 3543722, at *4 (E.D.La. Oct.6, 2005) (holding president of corporation liable as employer where he, *inter alia,* maintained control over the corporation's employment and pay practices and had the authority to make all major decisions regarding the corporation's business affairs); *Reich v. Priba Corp.,* 890 F.Supp. 586, 589 (N.D.Tex.1995) (holding officer liable where he made major policy decisions affecting the profitability of the corporation).

■ Eller's personal religious beliefs have largely dictated the policies, work rules, and staff allocation of Eller and Sons Trees. Eller is an adherent to the Seventh Day Adventist religion. Eller and Sons Trees workers do not work on Saturdays. Eller personally set the policy prohibiting the scheduling of work on Saturdays because of his personal religious beliefs about the Sabbath.[5] Eller and Sons Trees employees may take their chosen Sabbath day off work, but they cannot work on Saturdays because Eller's personal religious beliefs prohibit it. Eller ran daily staff and prayer meetings at Eller and Sons Trees when he was in the central office. Eller further personally instructs the Eller and Sons Trees field supervisors to start their work day with morning worship, although most of the field supervisors do not do so. Morning worship time at the beginning of the work day is on-the-clock, company time. Eller also is the CEO of LaGrange Christian Radio, Inc. and is a member of its Board of Directors. It is an undisputed fact that Eller has had Eller and Sons Trees' employees do work for LaGrange Christian Radio. As a corporate officer is properly held liable where his "financial control and force of personality replaced the usual corporate structure," *Dole v. Simpson,* 784 F.Supp. 538, 547 (S.D.Ind.1991), the above evidence also supports finding that Eller is a joint employer with Eller and Sons Trees. Further, that Eller enforced his personal religious tenets in the workplace demonstrates that Eller had operational control over Eller and Sons Trees.

Eller likewise is actively involved in the day-to-day operation of Eller and Sons Trees. Since the incorporation of Eller and Sons Trees, Eller has taken a leadership role in the business, solving the problems of the company and doing whatever is needed to be done within his ability. Many employees consider or understand Eller to be their boss, although Eller disputes this characterization and states that no one is "the boss per se." (Affidavit of Jerry Eller "Eller Aff." ¶ 14.) Additionally, Eller has been present for every corporate meeting of Eller and Sons Trees that generated minutes, and he personally signed all corporate minutes. He was involved in the decision to downsize the company in 2005 and was also involved in the decision to set up another company as a wholly-owned subsidiary of Eller and Sons

---

5. In his affidavit, Eller attested that the company also found that workers would perform better having at least one day off in a week.

Trees. Eller has participated in addressing workshop safety at Eller and Sons Trees and participates in vehicle purchases and sales. On occasion, Eller has even planted trees himself. All of these facts support the conclusion that Eller was the employer of Plaintiffs, opt-in Plaintiffs, and the Rule 23(b)(3) class members. *See Patel,* 803 F.2d at 638 (holding that officer's involvement in day-to-day operations supports finding of personal liability); *Donovan,* 747 F.2d at 972 (noting that the president solved the major problems of the corporation); *Shultz v. Mack Farland & Sons Roofing Co.,* 413 F.2d 1296, 1299 (finding president of corporation liable where he, among other things, was considered the boss by employees).

In addition to the foregoing day-to-day activities, Eller is also involved in hiring, firing, promotion, and recruiting at Eller and Sons Trees. Eller personally hired bookkeeper Ron Oxentenko. Either Eller or Oxentenko hired bookkeeper Todd Brown. Eller and Oxentenko were the only two individuals authorized to hire workers for the Eller and Sons Trees' offices. Eller hired the Regional Directors of Eller and Sons Trees, and he also hired and/or contracted what the record shows he considers to be recruiting agents for Ellers and Sons Trees.[6] Eller promoted workers and supervisors into Regional Director positions, and he specifically promoted Ismael Recinos into his position as a recruiting agent in Guatemala for Eller and Sons Trees. Eller likewise had the authority to promote field workers into supervisory positions. Eller has been involved in hiring H–2B forestry workers for Eller and Sons Trees and has made trips to Guatemala to hold meetings with job applicants. Defendants also do not dispute that Eller has the authority to fire any individual employed by Eller and Sons Trees, although he normally delegates this duty to others. It is further undisputed that Eller has been involved in Eller and Sons Trees' procurement of the H–2B work visas pursuant to which the Plaintiff class is employed. Eller also was involved in hiring and promoting Eller and Sons Trees' visa-processing agents abroad, through whom Eller and Sons Trees' H–2B forestry workers are processed. This evidence, too, supports holding Eller personally liable under the FLSA and the AWPA. *See Reich,* 998 F.2d at 329 (manager participating in hiring found to be employer); *Donovan,* 747 F.2d at 972 (noting that the corporate officer personally selected the managers at every hotel); *Shultz,* 413 F.2d at 1300 (observing that president exercised hiring and firing authority over supervisory personnel); *Hodgson v. Royal Crown Bottling Co.,* 324 F.Supp. 342, 347 (N.D.Miss.1970) (holding that firing authority is indicative of employer status).

Defendants admit that Eller was involved in wage and hour matters at Eller and Sons Trees. In this regard, it is undisputed that Eller set up the pay structure for tree planters at Eller and Sons Trees. Eller has attended AWPA and FLSA compliance seminars on behalf of Eller and Sons Trees and has been the officer in charge of certifying the company's compliance with the provisions of those laws. Such facts have been considered significant by other courts in examining the issue of employer status. *See Stout v. Smolar,* Civil Action No. 1:05–CV–

---

6. In his affidavit, Mr. Eller states that "Mr. Recinos did not *necessarily* actively recruit workers but only assisted such workers with their necessary paperwork." (Eller Aff. ¶ 5.) This equivocal averment does not create a genuine disputed issue. Moreover, Defendants admit that Francisco Rubio, who worked as a supervisor for Eller and Sons Trees, recruited H–2B workers for Eller and Sons Trees in Honduras. (*See* Defendants Response to Plaintiffs' Statement of Material Facts ¶ ¶ 289, 290.)

1202–JOF, 2007 WL 2765519, at *5 (N.D.Ga. Sept.18, 2007) (holding individual defendant liable where he, among other things, made inquiries into the business' obligations under the FLSA); *Donohue v. Francis Servs.,* No. Civ.A. 04–170, 2005 WL 1155860, at *5 (E.D.La. May 11, 2005) (finding individual liable as FLSA employer where he was "responsible for setting pay policies and for assuring that the company complied with all state and federal wage laws"). The pay checks that class members received from Eller and Sons Trees bore Eller's stamped signature. When Eller and Sons Trees ceased to issue pay checks, Eller was involved in changing the method by which Eller and Sons Trees forestry workers received their payment. Defendants likewise admit that Eller, along with Oxentenko, established company policy restricting or allowing overtime hours for Eller and Sons Trees workers. Presented with a similar fact, at least one court has refused to dismiss an individual defendant from a case where the defendant was alleged to have employer status. *See Letcher v. Crawford Indus. Group, LLC,* NO. 6:06–CV–46–ORL–KRS, 2007 WL 1521520, at *2 (M.D.Fla. May 23, 2007). Eller consults with the Regional Directors regarding the productivity problems of individual tree ˙planters, and he also is involved in deciding which training materials will be distributed to improve the performance of Eller and Sons Trees field workers. Defendants concede that Eller established Eller and Sons Trees' policy about recording workers' compensa-ble hours and trained Eller and Sons Trees supervisors in recordkeeping.

▮ In sum, while Defendants have disputed numerous facts asserted by Plaintiffs, and often without basis or legitimate reason,[7] those disputes are rendered immaterial by the facts that Defendants have admitted. Here, any reasonable finder of fact would conclude that Jerry Eller employed Plaintiffs, as the undisputed facts demonstrate that he is the lone corporate officer and sole shareholder with operational control over a covered enterprise. *See Patel,* 803 F.2d at 637. He most certainly was involved in the day-to-day operation of his business, and that others were also occasionally involved in operational aspects of the business is not a persuasive reason to conclude that Eller was not the employer of Plaintiffs. Defendants' admissions render appropriate the entry of partial summary judgment for Plaintiffs on this issue, and the Court therefore holds that Jerry Eller was their employer as defined by the FLSA, 29 U.S.C. § 203(g), and by the AWPA, 29 U.S.C. § 1802(5).

**B. *Reimbursement of Expenses Under FLSA***

▮ Defendants move the Court to enter summary judgment in their favor on several issues pertaining to Plaintiffs' and opt-in. Plaintiffs' claims for reimbursement of expenses under the FLSA. Specifically, Defendants seek a determination that (1) the FLSA does not apply to alleged violations committed in foreign countries; (2)

---

7. In this regard, the Court completely agrees with the analysis by Plaintiffs set forth in their Reply Brief in Support of Plaintiffs' Motion for Partial Summary Judgment Finding Employer Status of Defendant Jerry Eller at pages 14 through 29, and the Court need not repeat that analysis herein. The Court will briefly mention that certain facts asserted by Plaintiffs are denied by Defendants based on certain averments in Jerry Eller's supplemen- tal affidavit that arguably contradict his prior deposition testimony. However, the Court will not strike the supplemental affidavit, as requested by Plaintiffs, as the averments in the affidavit could be construed as providing additional information about the issues in question. The Court finds the absence of a "flat contradiction." *Tippens v. Celotex Corp.,* 805 F.2d 949, 951, 953 (11th Cir.1986).

reimbursement of visa expenses and costs incurred for travel from the home country to the United States to begin new work is not required for H–2B workers; (3) Defendants' reliance on Department of Labor regulations and written material provides an absolute defense to Plaintiffs' FLSA claim for reimbursement of inbound travel and visa expenses; and (4) the two-year statute of limitations is applicable. The named Plaintiffs and opt-in Plaintiffs request entry of partial summary judgment against Defendants on liability and damages based on Defendants' alleged failure to reimburse expenses incurred for the primary benefit or convenience of Defendants, to the extent that those expenses dropped Plaintiffs' and opt-in Plaintiffs' pay in the first week of work below the federal minimum wage. For the reasons that follow, Defendants' Motion for Partial Summary Judgment with respect to the above issues Defendants raise is due to be denied, and Plaintiffs' Motion for Partial Summary Judgment Related to Unreimbursed Expenses is due to be granted.

■ The FLSA is a remedial statute designed to "eliminate ... substandard labor conditions" in the United States. *Powell v. United States Cartridge Co.,* 339 U.S. 497, 510, 70 S.Ct. 755, 94 L.Ed. 1017 (1950). It was enacted to protect workers who lack sufficient bargaining power to secure a subsistence wage. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 739–40, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 708, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The FLSA requires that employers pay employees no less than the hourly minimum wage, which was $5.15 per hour for the majority of the relevant period in this case.[8] The minimum wage must be received "free and clear" of improper deductions. 29 C.F.R.

§ 531.35 (providing that wages must be "free and clear" of improper deduction); *see also Arriaga v. Florida Pacific Farms, L.L.C.,* 305 F.3d 1228, 1241 (11th Cir.2002) ("The FLSA prevents improper deductions from reducing the wages of a worker below the minimum wage....").

Under the definition of wages in 29 U.S.C. § 203(m), an employer may regard as wages the reasonable cost of providing "board, lodging, or other facilities" and thus may count them toward satisfying its minimum wage obligations. 29 U.S.C. § 203(m). Thus, in certain limited circumstances, an employer who provides meals or housing for workers may be credited for the reasonable cost of those "facilities" when compliance with minimum wage requirements is assessed. 29 C.F.R. § 531.32(a). The FLSA does not itself define "other facilities," but the United States Department of Labor (referred to herein as the "Department of Labor") has promulgated regulations to clarify this provision. *See* 29 C.F.R. § 531.32(a). Under these regulations, an employer may claim a wage credit for "other facilities" only when they are "something like board or lodging." *Id.*

■ Facilities that are primarily for the benefit or convenience of the employer, however, are never "other facilities" within the meaning of 29 U.S.C. § 203(m) and consequently may never be treated as wages. 29 C.F.R. § 531.32(c). Therefore, an employer may not deduct from employee wages costs incurred primarily for the employer's benefit if the deductions drive wages below the minimum wage. *Arriaga,* 305 F.3d at 1236.

In *Arriaga,* the Eleventh Circuit held that, under the FLSA, transportation and visa expenses such as those incurred by

8. The federal hourly minimum wage rose to $5.85 per hour on July 24, 2007.

Plaintiffs in this case must be reimbursed by an employer, as they are "an incident of and necessary to the employment." *Id.* at 1242. *Arriaga* involved domestic agricultural employers who hired nonimmigrant aliens from Mexico as farm laborers to work on a seasonal basis pursuant to the H2–A visa program. Laborers who passed the interview process paid for their own travel to the United States, visa costs, and miscellaneous recruiting fees. After deducting these expenses from wages earned, the laborers' net income fell below the statutory minimum wage. In concluding that the expenses had to be reimbursed where failure to do so would drop the employees' wages below the minimum wage, the *Arriaga* court determined that the costs were "an inevitable and inescapable consequence of having foreign ... workers employed in the United States." *Id.* The court likewise reasoned that the expenses should be reimbursed because they were not expenses that the employees would have incurred normally in the course of life. *Id.* at 1243–44. Rather, they were costs necessitated by the job itself. *Id.*

Defendants attempt to distinguish *Arriaga* from the case at bar by pointing out that the farm laborers in *Arriaga* were H–2A workers rather than H–2B workers. Defendants emphasize that the statutory and regulatory schemes governing the two programs differ and therefore urge that the Court should not follow *Arriaga.* Whereas the regulations governing the H–2A program expressly require reimbursement of inbound travel expenses, *see* 20

C.F.R. § 655.102(b)(5)(i), 655.202(b)(5)(i), the regulations governing the H–2B program only expressly require an employer to pay for outbound transportation if the employer terminates a worker's employment before the end of the period of authorized admission. The Court, nevertheless, for the many reasons articulated by Plaintiffs, finds Defendants' arguments about the inapplicability of *Arriaga* unavailing. *Arriaga* is highly persuasive precedent for the proposition that the travel and visa costs incurred by Plaintiffs were "for the primary benefit and convenience" of Defendants and thus are not "other facilities" that can be counted as wage credits pursuant to 29 U.S.C. § 203(m). *See Castellanos–Contreras v. Decatur Hotels, L.L.C.,* 488 F.Supp.2d 565, 571–72 & n. 5 (E.D.La.2007) (finding *Arriaga* to be "extremely persuasive precedent in the H–2B context); *Recinos–Recinos v. Express Forestry, Inc.,* No. Civ.A. 05–1355, 2006 WL 197030, at *14 (E.D.La. Jan.24, 2006) (finding that" [t]he *rationale* employed by the *Arriaga* court is applicable to the H2–B program) (emphasis in original).

Moreover, Defendants' obligations under the FLSA exist independent of the H–2B regulations, and Defendants are bound by the FLSA's minimum wage provision, 29 U.S.C. § 206, regardless of what the H–2B regulations may require.[9] As Plaintiffs argue, an employer may be bound by different obligations under different statutory schemes, and the Eleventh Circuit made explicit in *Arriaga* that when this occurs, an employer must comply with the more stringent scheme. 305

**9.** Defendants cite Department of Labor Guidance Letter 23–01 for the proposition that an employer's requirement to pay outbound transportation costs for an H–2B worker is "the sole provision for employer-paid transportation applicable to H–2B employees." (Defs.' Ex. 5.) This guidance letter is devoted to the H–2A program. Although the guidance letter makes passing reference to an employer's obligation to reimburse return travel under the H–2B program, nowhere does it say that this is the "sole provision" applicable to H–2B workers' travel, nor does it address an employer's responsibilities under the FLSA at all.

F.3d at 1235 ("[W]hen employment statutes overlap, we apply the higher requirement unless the regulations are mutually exclusive."). Here, as in *Arriaga,* although the applicable guestworker regulations do not require reimbursement of expenses benefiting the employer in the first workweek, the FLSA does. Consequently, the FLSA governs.

■ Relying on 29 U.S.C. § 213(f), Defendants also argue that expenses incurred in a foreign country are beyond FLSA's jurisdiction. Defendants specifically seek the entry of partial summary judgment in their favor on this issue. However, the Court agrees with Plaintiffs that the wage violations giving rise to Plaintiffs' FLSA claims for reimbursement occurred within the United States. In this case, Plaintiffs' reimbursement-related claims are for wage violations. Defendants are alleged to have violated the FLSA and the AWPA in Plaintiffs' first workweeks when they were in the United States and Defendants failed to reimburse their employees' expenses up to the level of the applicable wage. *See Arriaga,* 305 F.3d at 1237 ("Workers must be reimbursed during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage."). It is undisputed that during Plaintiffs' first workweeks in Defendants' employ, they worked only in the United States. As the claim for unreimbursed expenses did not arise until after Plaintiffs were in the United States, no extraterritorial application of the FLSA is implicated, and the cases relied on by Defendants, including *Reyes–Gaona v. North Carolina Growers Ass'n,* 250 F.3d 861 (4th Cir.2001), do not require a contrary conclusion.

Indeed, the authority cited by Defendants proves this point. Section 213(f) of the FLSA provides that the minimum wage and overtime provisions of the FLSA do not apply "to an employee whose services during the workweek are performed in a workplace within a foreign country." 29 U.S.C. § 213(f). Similarly, the cases cited by Defendants also address situations where the violation at issue occurred outside the United States. *See, e.g., Roe v. Bridgestone Corp.,* 492 F.Supp.2d 988, 1000 (S.D.Ind.2007). Insofar as the FLSA violations claimed by Plaintiffs in this case occurred within the United States when Defendants failed to reimburse them, the cases Defendants cite demonstrate that no genuine extraterritorial application of United States law is required. Defendants' Motion for Partial Summary Judgment seeking a determination that the FLSA does not apply under the circumstances presented is denied.

A persuasive case that the Court also finds instructive in this regard was decided just this year. *See Rivera v. Brickman Group, Ltd.,* No. 05–1518, 2008 WL 81570 (E.D.Pa. Jan.7, 2008). In *Rivera,* a group of H–2B landscapers filed suit for minimum wage violations arising from their employer's failure to reimburse them for travel, visa, and passport expenses. The defendants argued, among other things, that the Immigration and Nationality Act (the "INA") did not require them to reimburse these costs and that the INA superceded the FLSA. The Court rejected this argument and applied *Arriaga* to determine that the H–2B plaintiffs were entitled to reimbursement under the FLSA for travel, visa, and recruitment fees. This Court, as has another court since the issuance of the *Rivera* decision, agrees with this decision. *See also Rosales v. Hispanic Employee Leasing Program, LLC,* No. 1:06–CV–877, 2008 WL 363479, at *1 (W.D.Mich. Feb.11, 2008).

The Court additionally finds that the situation of the twenty-five Guatemalan,

Mexican, and Honduran workers seeking partial summary judgment on the FLSA claim in this case is substantially similar to that of the plaintiffs in *Arriaga* and its progeny. *See, e.g., Castellanos–Contreras,* 488 F.Supp.2d at 571–72 & n. 5; *Recinos–Recinos,* 2006 WL 197030, at *14. As argued by Plaintiffs, the passport, visa, and travel expenses they incurred were incidents of and necessary to their employment with Defendants, 29 C.F.R. § 531.32(a), and were not costs that they would have incurred otherwise in the course of ordinary life. *Arriaga,* 305 F.3d at 1243–44.

As support for the foregoing findings, the Court observes that Defendants knew that the purpose of the H–2B program was to bring foreign workers for employment in the United States and knew that these workers necessarily would have to obtain the relevant documents and travel a non-commutable distance in order to work for Eller and Sons Trees. Eller, in his capacity as President of Eller and Sons Trees, sent letters to the Guatemalan Consulate "authoriz[ing] Ismael Recinos to act as [his] agent for the purposes of processing visas at the American Embassy in Guatemala." (Pls.' Ex. 96.) This letter acknowledged that the H–2B applicants were to each pay Mr. Recinos $60.00. Further, while Defendants did not pay Mr. Recinos for his visa processing work, did not ever impose a specific limit on how much Mr. Recinos could charge workers to be hired, and did not monitor the amount that Mr. Recinos actually did charge workers, Eller acknowledges having a conversation with Mr. Recinos about how much he could charge workers to be hired. There is an evidentiary dispute as to whether Defendants ever authorized Mr. Recinos to charge processing fees, but that dispute is immaterial, in light of the other evidence of record. The undisputed material facts are that Defendants were aware that Mr.

Recinos was charging Plaintiffs and opt-in Plaintiffs fees, and Defendants acknowledged that Mr. Recinos acted as their agent in connection with the visa processing. It is further undisputed that nobody at Eller and Sons Trees ever informed Mr. Recinos that he should not be charging workers for visa and processing fees. There is no dispute that none of these costs incurred by Plaintiffs and opt-in Plaintiffs were ever reimbursed by Defendants, as Defendants maintained a policy of not paying or reimbursing its workers for these expenses.

Because H–2B workers are admissible only in those instances in which there are insufficient domestic workers available who are capable of performing the job, 8 C.F.R. § 214.2(h)(6)(iv)(A)(1), by definition, Eller and Sons Trees would have faced a labor shortage if H–2B workers were unavailable. According to Eller's own deposition testimony, the H–2B program provided the "only possibility" for meeting Defendants' labor needs. (Second Deposition of Eller and Sons Trees "Eller and Sons 2d Dep." at 54.) Defendants recognized that domestic workers can find "higher wages and a better life style" in other jobs. (*See* Pls.' Ex. 137 at 5.) Consequently, Eller and Sons Trees "absolutely needed" H–2B workers. (Eller Dep. at 111.) During the relevant time period, approximately 99 percent of Defendants' labor force has been H–2B workers. Thus, the evidence of record shows that Defendants were dependent on the H–2B program to provide reliable workers. Defendants sought out and recruited workers in their home countries. Mr. Recinos acted as Eller and Sons Trees' agent in Guatemala and assisted workers in obtaining the proper paperwork and getting to the United States to work for Eller and Sons Trees. Likewise, Francisco Rubio was Eller and Sons Trees' recruiting agent for

H–2B workers in Honduras. Eller traveled himself to Guatemala on several occasions and was involved in deciding the countries from which to seek workers. He also has occasionally helped workers to obtain visas.

As Defendants were aware of the requirements for workers to participate in the H–2B program, Defendants presented the costs of obtaining a passport and United States visa and traveling to the United States as necessary costs for being able to come work for Eller and Sons Trees. Unless the workers already had passports, the workers had to pay the costs for passports as well as visas. All H–2B workers from Guatemala had to pay a $100 visa fee, in addition to processing fees. Honduran and Mexican workers also had to pay travel, passport, and visa costs. For the time period relevant to this lawsuit, the cost of a five-year passport for a Honduran H–2B forestry worker was $35.00. Thus, like the costs described in *Arriaga*, Plaintiffs' visa, passport, and travel costs were incidents of and necessary to their employment with Defendants.

Additionally, the passport, visa, and travel costs were not expenses Plaintiffs would have incurred in the ordinary course of life, such as board and lodging. *See* 29 C.F.R. § 531.32(a). Plaintiffs who did not have passports were required to obtain passports as a necessary first step to participating in the H–2B program, as nonimmigrant temporary workers, such as H–2B workers, cannot enter the United States without a valid passport. 8 U.S.C.

§ 1182(a)(7)(B)(i). Deposition testimony in this case establishes that many of the Plaintiff workers did not have passports before purchasing them in order to work for Eller and Sons Trees. Unlike food or lodging, visa costs and airplane or bus tickets were not costs Plaintiffs would have otherwise incurred in the normal course of their lives. Rather, these were costs specifically necessitated by their employment with Eller and Sons Trees. *See* 29 C.F.R. §§ 531.3, 531.32(c). Outside of their employment with Defendants, Plaintiffs' airline tickets to the United States likely would have been of no use to them, since they likely would not have been able to enter the United States legally without the H–2B visa. 8 U.S.C. § 1182(a)(7)(B)(i). Similarly, absent another employer independently filing its own visa petition, the H–2B visas that Plaintiffs obtained pursuant to their work with Eller and Sons Trees could not be used to apply for work with other employers, since the terms of the visas prohibited working for another employer. 8 C.F.R. § 214.2(h)(2)(i)(D).

Based on those facts that are undisputed in this case, the Court finds that the FLSA claimants seeking partial summary judgment incurred passport, visa, and travel costs that were primarily for the benefit of Defendants. Accordingly, like the many other courts that have followed *Arriaga*, the Court finds as a matter of law that Plaintiff's transportation, visa, and passport costs are expenses incurred primarily for the benefit of their employers.[10] *See, e.g., Morante–Navarro v. T & Y Pine*

---

**10.** The Court notes that Defendants attempt to argue, without even colorable record support, that the workers at issue in this case were not hired until after they had traveled from their respective countries to the United States and arrived in Franklin, Georgia. The record evidence shows that Defendants considered Plaintiffs their employees during the recruitment process in their home countries.

(*See* Defs.' Ex. 2 at 4–6; Eller Dep. at 129–131; Deposition of Eller and Sons Trees "Eller and Sons Trees Dep." at 49.) The evidence cited by Defendants to support their characterization of the workers as "job applicants" does not support the characterization. The Court, accordingly, rejects Defendants' argument.

*Straw, Inc.*, 350 F.3d 1163, 1166 n. 2 (11th Cir.2003); *Castellanos–Contreras*, 488 F.Supp.2d at 571–72 & n. 5; *Recinos–Recinos*, 2006 WL 197030, at *14. To the extent that these expenses reduced Plaintiffs' and opt-in Plaintiffs' wages below the minimum wage, these workers are due to be reimbursed. Given this conclusion, the Court denies Defendants' Motion for Partial Summary Judgment seeking a determination that the reimbursement of visa expenses and costs incurred for travel from the home country to the United States to begin new work is not required for H–2B workers.

 Defendants argue that they are entitled to a complete defense to liability, as provided in the Portal–to–Portal Act, 29 U.S.C. § 259. Section 10 of the Portal–to–Portal Act provides that an employer shall not be liable for failure to pay wages if the employer pleads and proves that its actions were "in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259. To meet this burden, Defendants must have acted in actual reliance on and in actual conformity with this guidance. 29 C.F.R. §§ 790.14(a); 790.16(a). In their briefing on these summary judgment issues, Defendants claim to have relied on Employment and Training Administration Guidance Letter 23–01 and 20 C.F.R. § 655.731(c)(9)(iii)(c) in refusing to pay relocation expenses. Contrary to this assertion, however, Defendants have not pointed to any evidence of record demonstrating that Defendants actually relied on Guidance Letter 23–01 or 20 C.F.R. § 655.731(c)(9)(iii)(c). Tellingly, in discovery, Plaintiffs specifically sought from Defendants information and documents concerning what they relied on in

asserting this defense to liability. Defendants did not mention or produce Guidance Letter 23–01 or 20 C.F.R. § 655.731. Pursuant to Federal Rule of Civil Procedure 37(c)(1), any evidence of such reliance on this Guidance Letter or 20 C.F.R. § 655.731 likely would be inadmissible, in any event. Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Even if Defendants had properly presented evidence of such reliance, such reliance would offer no safe harbor under 29 U.S.C. § 259 because Guidance Letter 23–01 was written by the Assistant Secretary of the Employment and Training Administration, not the Administrator of the Wage and Hour Division of the Department of Labor, as is expressly required under section 259. *See* 29 U.S.C. § 259(b). Similarly, Defendants' alleged reliance on 20 C.F.R. § 655.731(c)(9)(iii)(c) is misplaced, as this regulation specifically applies only to H–B1 workers. Defendants' arguments in favor of a complete defense to FLSA liability thus fail, as they have presented no valid basis for such a defense to be invoked. The Court denies Defendants' Motion for Partial Summary Judgment seeking a determination that Defendants' reliance on Department of Labor regulations and written materials provides an absolute defense to Plaintiffs' FLSA claim for reimbursement of inbound travel and visa expenses.

 Next, arguing that Plaintiffs cannot show that Defendants "willfully" violated the FLSA, Defendants seek a ruling that the FLSA two-year statute of limitations should apply in this case. In this regard, the FLSA generally provides for a two-year statute of limitations to

enforce its provisions but allows a three-year limitations period for a "cause of action arising out of a willful violation." 29 U.S.C. § 255(a); *see also Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). A violation of the FLSA is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677. This standard requires "more than a showing of negligence on the employer's part." *Id.* A violation will be deemed "in reckless disregard ... if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c)(3). Plaintiffs bear the burden of proving that Defendant's acts or omissions were "willful," as contemplated by the FLSA. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir.2008); *Palmer v. Stewart County Sch. Dist.*, 178 Fed.Appx. 999, 1005 (11th Cir.2006).

Plaintiffs have presented evidence that Defendants were on notice that they were or were likely violating the FLSA by failing to reimburse their H–2B workers for the aforementioned pre-employment expenses they incurred. The record evidence reveals that Defendants were aware of *Arriaga* and, in fact, one of Eller and Sons Trees 30(b)(6) representatives, Mr. Oxentenko, testified that he was sure they had spoken to the United States Depart-

ment of Labor about the decision. Without citing any record evidence, Defendants state that the United States Department of Labor did not apply *Arriaga* to H–2B workers, but this unsupported statement carries no weight. Notably, even before *Arriaga*, Defendants saw videos of two Department of Labor trainings, and the videos confirm that Defendants were on notice of the unlawfulness of their conduct. The Wage and Hour personnel explicitly and repeatedly explained that employers of H–2B workers must reimburse transportation costs for workers traveling from a distant place of hire to the job site. The videos further show that the Wage and Hour personnel explicitly rejected the argument that an employer could avoid its duty to reimburse through pre-disclosing to an employee their intent not to reimburse. Curiously, and without requisite evidentiary support, Defendants now state that the videotapes did not capture the whole meeting.[11]

Defendants claim that the Department of Labor officials clarified their position in a February 18, 2000 opinion letter that was sent to Congressman Lindsay Graham. Contrary to Defendants' assertions that this letter stated that an H–2B employer would be in compliance if they disclosed their non-reimbursement policy, this letter does not so state. Rather, the letter states that although the Department of Labor has taken a non-enforcement position itself on this issue,

> [A] worker might still file a private action against an employer to recover such [unreimbursed] costs. The right

---

11. Relying on the affidavit of Mr. Oxentenko and the declaration of J. Larry Stine, who has now made himself a witness in this case while also being counsel of record for Defendants, Defendants state that a Department of Labor official stated at the end of the meeting or after the meeting that, in the case of H–2B workers, Defendants would be in compliance

if they disclosed to their prospective employees that they would not reimburse them for inbound travel expenses. The letter that Defendants received subsequent to that meeting, discussed *infra*, refutes any such statement that was made at the meeting or after the meeting, particularly as it pertains to Defendants' obligations under the FLSA.

of a worker to pursue such a private action was not negated by our agency's decision to take a non-enforcement posture on this issue. Certain courts have ruled that these costs are primarily an employer benefit and have ordered employers to pay workers for costs that workers had incurred re: travel from a foreign country to a place of employment.

(Defs.' Ex. 4.) In other words, this letter expressly warns against taking the Department of Labor's non-enforcement position as proof of compliance. *See De Luna–Guerrero v. North Carolina Grower's Ass'n,* 338 F.Supp.2d 649, 658–59 (E.D.N.C.2004). In light of this letter, the Court agrees with Plaintiffs that Defendants were on notice that this non-enforcement position posed no legal bar to individual claims. Given this knowledge and the unequivocal on-camera statements Department of Labor officials made regarding employee expenses, Defendants plainly acted in knowing and reckless disregard of the provisions of the FLSA in this area. At the very least, further inquiry was required.

 Defendants claim ignorance to the principle that requiring employees to pay for expenses incurred for the benefit of the employer functions as a *de facto* wage deduction. This principle, however, is well-established in the law. *See* 29 C.F.R. § 531.35; *Arriaga,* 305 F.3d at 1236; *Ayres v. 127 Rest. Corp.,* 12 F.Supp.2d 305, 310 (S.D.N.Y.1998). Moreover, in the meeting videotaped by Defendants, Department of Labor officials made clear that there was no difference between deducting an expense and failing to reimburse the expense.

Moreover, the opinion letters referenced in *Arriaga,* although cited by Defendants as a basis for their policy not to reimburse H–2B workers for their travel and visa costs, state that an employer may not cut into the minimum wage by deducting transportation costs. At a minimum, these letters put Defendants on inquiry notice that their policy violated the FLSA. *See* 29 C.F.R. § 578.3(c)(3).

The evidence thus shows that Defendants knew of the FLSA's reimbursement requirement. Nevertheless, they refused to comply with their legal duty. Defendants admit that they did not reimburse Plaintiffs for passports, visas and visa processing, travel, or border crossing expenses. This conduct demonstrates willful violations of the FLSA and triggers the three-year limitations period for willful violations. *See Richland Shoe,* 486 U.S. at 133, 108 S.Ct. 1677; *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.,* 469 F.Supp.2d 1086, 1093 (M.D.Fla.2006); *Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1269, 1288 (M.D.Fla.1999). In light of the Court's conclusion here, the Court denies Defendants' Motion for Partial Summary Judgment seeking a determination that the two-year FLSA statute of limitations is applicable.

Plaintiffs and opt-in Plaintiffs have suffered damages as a consequence of Defendants' actions. In their first workweeks, they not only failed to receive the minimum wage, they actually had negative incomes. As established by the evidence of record and the Affidavit of Dr. Dwight D. Steward, in particular, FLSA violations did occur. Based on Dr. Steward's testimony and the stipulations the parties have entered into that cover almost all of the amounts of incurred expenses claimed by the Plaintiffs and opt-in Plaintiffs, the Court finds that Plaintiffs and opt-in Plaintiffs are due to be reimbursed unpaid minimum wages in the amount of $26,945.43.

 Plaintiffs and opt-in Plaintiffs are also entitled to liquidated damages as a matter of law, as Defendants cannot

show that their refusal to reimburse was in good faith and objectively reasonable. To avoid liquidated damages, the employer carries a substantial burden to prove that it had "an honest intention to ascertain what [the FLSA] requires and to act in accordance with it." *Dybach v. State of Florida Dep't of Corrections*, 942 F.2d 1562, 1566 (11th Cir.1991) (internal quotation marks omitted and alteration in original); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir.1979). In addition to this subjective test, the employer must also prove that its belief that its policy complied with the FLSA was objectively reasonable. *Dybach*, 942 F.2d at 1567. If the employer fails to come forward with plain and substantial evidence to satisfy both the good faith and reasonableness requirements, the court is required to award liquidated damages. *See Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984). Based on the evidence that this Court has already reviewed and discussed herein, the Court finds that Defendants have not met the requisite substantial burden, and the Court accordingly awards Plaintiffs and opt-in Plaintiffs an amount equal to their unpaid minimum wages as liquidated damages. *See* 29 U.S.C. § 216(b).

In sum, Plaintiffs are entitled to partial summary judgment in the amount of $53,890.86 with respect to that part of Plaintiffs' and opt-in Plaintiffs' FLSA claims related to unreimbursed expenses during their first workweeks.

### C. *Reimbursement of Expenses Under AWPA*

■ Defendants move the Court for summary judgment seeking a determination that failure to pay relocation costs is not a violation of the AWPA. Plaintiffs, on behalf of themselves and the Rule 23(b)(3) class members they represent, request entry of partial summary judgment against Defendants with respect to liability based on Defendants' alleged failure to reimburse expenses incurred primarily for Defendants' benefit and convenience, to the extent that those expenses dropped the wages of the H–2B guestworkers they employed below the H–2B prevailing wage or, alternatively, below the federal minimum wage. Here, the Court likewise concludes that Defendants are not entitled to summary judgment and that Plaintiffs and the Rule 23(b)(3) class members are entitled to summary judgment on their AWPA claims related to travel, visa, and passport expenses. The Court further finds that Plaintiffs and the Rule 23(b)(3) class members are entitled to reimbursement up to the level of the applicable prevailing wage.

■ By way of background, the AWPA was enacted to ensure necessary protections for migrant and seasonal agricultural workers. 29 U.S.C. § 1801. The AWPA, like the FLSA, is a remedial statute and thus should be construed broadly to effect its humanitarian purpose. *Renteria–Marin v. Ag–Mart Produce, Inc.*, 537 F.3d 1321, 1325 (11th Cir.2008) (quoting *Caro–Galvan v. Curtis Richardson*, 993 F.2d 1500, 1505 (11th Cir.1993)). Among the AWPA's protections are the requirements that covered employers pay wages owed when due to migrant agricultural workers and comply with the terms of the working arrangement with those employees. 29 U.S.C. §§ 1822(a) & (c). The wage provision of section 1822 is not limited to wages due under the AWPA but instead provides that "wages must be paid when due, without limiting the source of the obligation." *Medrano v. D'Arrigo Bros. Co.*, 125 F.Supp.2d 1163, 1166–68 (N.D.Cal.2000). The AWPA wage and working arrangement provisions have been held to incorporate applicable federal and state law and regulations, including, *inter*

*alia,* the obligations imposed by the FLSA. *Donaldson v. United States Dep't of Labor,* 930 F.2d 339, 349–50 (4th Cir.1991); *Saur v. Snappy Apple Farms, Inc.,* 203 F.R.D. 281 (W.D.Mich.2001); *Elizondo v. Podgorniak,* 100 F.Supp.2d 459, 463 (E.D.Mich.2000); *Wales,* 192 F.Supp.2d at 1287; *Medrano,* 125 F.Supp.2d at 1166–68. Hence, failure to pay wages required under another statute or regulation is a violation of the AWPA, even if the other statute provides no private right of action. *Donaldson,* 930 F.2d at 349–50.

Defendants argue that because the reimbursement of travel, visa, and passport expenses is an FLSA issue, it can only be an FLSA issue. This argument is without legal support and was rejected by the Eleventh Circuit on Defendants' appeal of this Court's class certification order. There, the Eleventh Circuit ruled that Plaintiffs' AWPA wage claims were not FLSA claims in disguise and need not be confined to the FLSA. *De Leon–Granados v. Eller and Sons Trees, Inc.,* 497 F.3d 1214, 1219 (11th Cir.2007) ("Although both the AWPA claims and FLSA claims seek unpaid wages, they are not identical. The workers are entitled to recover the prevailing wage rate under the AWPA and only the minimum wage rate under the FLSA."). Furthermore, as Plaintiffs maintain, numerous cases have allowed claims for minimum wage and overtime violations to proceed under both the AWPA and the FLSA. *See Silva–Arriaga v. Texas Exp., Inc.,* 222 F.R.D. 684 (M.D.Fla.2004); *Saur,* 203 F.R.D. at 281; *De Leon v. Trevino,* 163 F.Supp.2d 682 (S.D.Tex.2001); *Wales,* 192 F.Supp.2d at 1287.

■ Moreover, the AWPA establishes a "statutory contract" for agricultural workers, under which the employer's failure to comply with the terms and conditions of employment given in the required disclosure gives rise to a breach of the AWPA. *Villalobos v. Vasquez–Campbell,* No. EP–89–CA–27, 1991 WL 311902, at *7 (W.D.Tex. Nov.15, 1991). A failure to pay employees as promised therefore constitutes a violation of the AWPA. *See Martinez v. Shinn,* No. C–89–813–JBH, 1991 WL 84473, at *17 (E.D.Wash. May 20, 1991); *see also Castillo v. Case Farms of Ohio, Inc.,* 96 F.Supp.2d 578, 612 (W.D.Tex.1999).

In the instant case, the named Plaintiffs and the Rule 23(b)(3) class members they represent are temporary foreign workers brought to the United States under the H–2B guestworker program. 8 U.S.C. § 1101(a)(15)(H)(ii)(b). In order to obtain H–2B certification, a prospective H–2B employer must certify to the Department of Labor that the alien's employment would not adversely affect wages of similarly situated workers in the United States. 8 C.F.R. § 214.2(h)(6)(iv)(A)(1). As a consequence, employers of H–2B workers must pay them an hourly prevailing wage rate determined by the State Employment Security Agency in the area where the work will be performed. This prevailing wage rate must be checked by the Department of Labor certifying officer to ensure that the offered wages and working conditions do not adversely affect domestic workers. 20 C.F.R. § 655.3. In addition to benefitting the H–2B workers themselves, these prevailing wage rates protect domestic workers by ensuring that an employer's hiring of foreign guestworkers does not drive down local wages. *See Feller v. Brock,* 802 F.2d 722 (4th Cir. 1986).

Plaintiffs state that the H–2B prevailing wage rates applicable to Plaintiffs and

Rule 23(b)(3) class members varied between $5.15 per hour (for Minnesota and Maine in 1999) and $11.37 per hour (for Montana in 2004–2007) for the years at issue here. Defendants' ETA–750 Applications for Alien Labor Certification listed the prevailing wage that H–2B workers would receive for their work with Defendants. Moreover, it is undisputed that the prevailing wage rates for each season were listed on the required disclosures Defendants provided workers under the AWPA. Mr. Eller distributed these disclosures to workers at recruiting meetings in Guatemala.

■ This required prevailing wage is precisely the wage protected by section 1822(a) of the AWPA. *See De Leon–Granados v. Eller and Sons Trees, Inc.,* 497 F.3d 1214, 1219 (11th Cir.2007) ("The workers are entitled to recover the prevailing wage rate under the AWPA and only the minimum wage rate under the FLSA."); *(see also* Pls.' Ex. 130 [U.S. Department of Labor Field Assistance Bulletin No. 2007–1] ). Accordingly, and as recognized by the Eleventh Circuit in this very case, the AWPA wage payment provision stated in Section 1822(a) incorporates the H–2B prevailing wage requirement.

■ Further, the Court finds that the H–2B prevailing wage is incorporated into the working arrangement between Eller and Sons Trees and its workers under 29 U.S.C. § 1822(c). Defendants provided each worker with a disclosure indicating the prevailing wage rates they would be paid in different states in the coming tree planting season. By promising workers these wages, Defendants became obligated to pay them under the AWPA. *See Castillo,* 96 F.Supp.2d at 612; *Martinez v. Shinn,* No. C–89–813–JBH, 1991 WL 84473, at *17 (E.D.Wash. May 20, 1991); *Villalobos,* 1991 WL 311902, at *7.

■ Defendants argue that their disclosure of their non-reimbursement policy to their employees and that the purported approval of their AWPA disclosure letters by the Department of Labor brings them in compliance with the AWPA and prevents them from having a duty to reimburse the expenses incurred for their benefit. Defendants are misapplying the law and are not fairly representing the facts. Contrary to Defendants' suggestion, there is no evidence that Defendants' AWPA disclosure letters were regularly submitted to or approved by the Department of Labor. Furthermore, even if the AWPA disclosure letters were provided as part of the labor certification process, the Employment and Training Administration, which reviews labor certification applications, is not charged with enforcing labor laws. This is a point that the Court made in its discussion, *supra,* regarding the claims for these same expenses under the FLSA. Thus, the fact that the Department of Labor did not reject Defendants' applications for labor certification cannot be understood to mean that Defendants were in compliance with labor laws. *See De Luna–Guerrero,* 338 F.Supp.2d at 659; *see also Morante–Navarro,* 350 F.3d at 1165.

■ Defendants likewise reason that as long as they disclosed a payment practice to their employees, they cannot be liable for that practice. This argument presents a closer question, when considering the basis for Plaintiffs' and the Rule 23(b)(3) class members' claims under a breach of contract theory. Nevertheless, after carefully considering the arguments of the parties, the Court rejects Defendants' suggestion that they should essen-

tially be able to enter into a contract that would allow them to violate the law, so long as the other contracting parties agree.[12] As Plaintiffs argue, if Defendants disclosed a policy of paying workers only $3.00 per hour, for example, the mere fact of disclosure would not make this an acceptable pay rate under the AWPA. In this same vein, Defendants cannot transform the minimum wage violations arising from non-reimbursement of employee expenses into acceptable practice merely by announcing them to employees.

 While Plaintiffs have admitted that no one at Eller and Sons Trees promised or informed them that they would be provided reimbursement for travel and visa expenses to come work for Defendants under the H–2B program, employees cannot waive their rights to the protections under the AWPA, including the right to be paid wages when due. *See* 29 U.S.C. § 1856; *see also Villalobos v. North Carolina Growers Ass'n,* 252 F.Supp.2d 1, 10 (D.P.R.2002); *Maldonado v. Lucca,* 636 F.Supp. 621, 624 (D.N.J.1986). Consequently, to the extent that Defendants argue that workers were aware of and acquiesced to the non-reimbursement policy and thus cannot now object to it, the Court finds that the AWPA bars that argument.

The Court also rejects Defendants' argument that Plaintiffs and the Rule 23(b)(3) class members seek to recover for a violation that occurred outside of the United States. The Court thoroughly discussed its analysis in this regard in Section V.B. of this Order and need not repeat that analysis here.

██ The evidence of record shows that Defendants violated § 1822 of the AWPA by failing to reimburse workers for the passport, visa, and travel costs they incurred for Defendants' primary benefit. Where an employer is required to pay a prevailing wage higher than the federal minimum wage, an employer is precluded from making deductions for its own benefit that reduce employee pay below the mandated prevailing wage. *Avila–Gonzalez v. Barajas,* No. 2:04–CV–567, 2006 WL 643297, at *2 (M.D.Fla. Mar. 2, 2006). Here, as stated *supra,* class members incurred significant costs that were primarily for the benefit or convenience of Defendants. Because these costs had the same legal effect as a deduction from employees' wages, *Arriaga,* 305 F.3d at 1236, Plaintiffs and the Rule 23(b)(3) class members did not receive the promised prevailing wage during their first workweeks of employment.

The Court accepts Plaintiffs' position that the costs incurred by workers, as discussed with respect to the FLSA claims *supra,* are representative of those incurred by the other class members. The evidence of record makes clear that Defendants required all H–2B guestworkers employed by them to pay their own passport, travel, visa, and other expenses. All of the H–2B workers employed by Defendants incurred similar, although not identical, expenses in obtaining work with Eller and Sons Trees. As explained *supra,* Defendants failed to pay the required minimum wage under the FLSA. As such, they necessarily also failed to pay Plaintiffs and the Rule 23(b)(3) class members the higher H–2B prevailing wage required by the AWPA.

12. In fact, Defendants only disclosed their non-payment of transportation expenses to their employees starting in the year 2000. Hence, for 1999, Defendants' argument on this point is simply incorrect. (Pls.' Ex. 110 at 1–5.) Further, while Defendants disclosed that employees would be responsible for their own transportation costs, their disclosures do not include the costs of passports, visas, recruitment fees, and I–94s. (Pls.' Ex. 110.)

In sum, the undisputed facts show that all of Defendants' H–2B workers incurred passport, visa, and transportation costs. Further, Defendants admit that they did not reimburse these costs. For the same reasons that the Court determined Defendants willfully violated the FLSA, the Court likewise finds that Defendants' violations of the AWPA were intentional and a part of Defendants' normal business practices. *See Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir.1981); *Stewart v. Everett,* 804 F.Supp. 1494, 1498 (M.D.Fla.1992). As such, as a matter of law, Defendants' failure to comply with the FLSA constitutes both a failure to pay wages under 29 U.S.C. § 1822(a) and a violation of the working arrangement under 29 U.S.C. § 1822(c). Plaintiffs and the Rule 23(b)(3) class members are thus entitled to summary judgment on this issue, and Defendant's Motion for Partial Summary Judgment is denied.

### D. *AWPA Recordkeeping Requirements*

 Defendants next move the Court for summary judgment seeking a determination that their payroll information meets the AWPA's requirements as to 29 U.S.C. § 1821(d)(2). Specifically, Defendants move for summary judgment as to the requirement that the employer provide to each employee an itemized pay stub each pay period reflecting information required by 29 U.S.C. § 1821(d)(1). Plaintiffs seek entry of partial summary judgment that Defendants failed to make, keep, and preserve accurate and complete records regarding Plaintiffs' and other class members' employment, in violation of the AWPA and its attendant regulations. 29 U.S.C. § 1821(d)(1); 29 C.F.R. § 500.80(a). For the reasons stated below, the Court denies both motions at this time.

Section 1821(d) imposes on agricultural employers and associations who employ migrant workers a reasonable standard of quality business and record keeping practices that requires them to:

(1) with respect to each such worker, make, keep and preserve records for three years of the following information:

(A) the basis on which wages are paid;

(B) the number of piecework units earned, if paid on a piece work basis;

(C) the number of hours worked;

(D) the total pay period earnings;

(E) the specific sums withheld and the purpose of each sum withheld; and

(F) the net pay; and

(2) provide to each such worker for each pay period, an itemized written statement of the information required by paragraph (1) of this subsection.

*See* 29 U.S.C. § 1821(d); *see also* 29 C.F.R. § 500.80(d). The record keeping provisions "are core protections offered by the Act," and all violations are punishable " 'to prevent minimum wage violations and other departures from [the Act] [,]' " even if the offenses are "mere technical violations." *Sanchez v. Overmyer,* 891 F.Supp. 1253, 1261 (N.D.Ohio 1995) (citations omitted); *see also Castillo,* 96 F.Supp.2d at 632 ("The AWPA was designed not only to punish, but also prevent such behavior."). A party violates § 1821(d) if the records kept and preserved and/or statements provided to the workers are not accurate. *See Sanchez,* 845 F.Supp. at 1190 (finding on summary judgment that employer had intentionally violated the AWPA by, *inter alia,* failing to keep accurate wage records and failing to provide plaintiffs with accu-

rate wage statements); *Sanchez,* 891 F.Supp. at 1255 (summarizing the summary judgment ruling regarding the inaccuracy of the wage records and wage statements).

■ As mentioned *supra,* in order for Plaintiffs to recover for violations of the AWPA, Defendants' violations must have been intentional. 29 U.S.C. § 1854(c)(1). In the context of the AWPA, "intentional" does not require a specific intent to violate the law, but merely "conscious or deliberate" acts. *Alvarez.,* 658 F.2d at 1224; *Maldonado,* 636 F.Supp. at 625. Plaintiffs thus must establish that Defendants deliberately engaged in the action that led to the violation. *Wales,* 192 F.Supp.2d at 1288.

In the case at bar, Defendants provide workers with a detailed pay document on an 8½ by 11 sheet. The document shows (a) the basis on which wages are paid; (b) the number of piecework units earned, if paid on a piecework basis; (c) the number of hours worked; (d) the total pay period earnings; (e) the specific sums withheld and the purpose of each sum withheld; and (f) the net pay received. Defendants contend that the pay documents demonstrate compliance with the AWPA.

Plaintiffs maintain, pointing to evidence in the record, that the payroll documents fail to show an accurate number of piecework units completed by Eller and Sons workers in the corresponding workweek. Plaintiffs specifically point to the following errors in this regard: (1) although planting works were normally paid by the tree planted, Eller and Sons supervisors estimated the number of trees that were in the seedling bundles the workers planted, using educated guesses to derive piece rate totals; (2) some supervisors awarded trees workers did not actually plant to

their workers' piece rate accounts as a kind of bonus; (3) supervisors attributed trees a worker planted on one work day to that worker's piece rate tally for the following work day; and (4) Eller and Sons supervisors compensated the performance of non-planting work—properly compensable on an hourly basis—not by recording hours worked but by adding fictitious trees, not actually planted, to the piece rate totals of workers performing this work.

Plaintiffs also maintain, pointing to evidence in the record, that the payroll documents fail to show an accurate number of hours worked by Defendants' workers. The specific errors with respect to work hours include the following: (1) Eller and Sons supervisors sometimes maintained no record at all of hours worked and merely noted piece rate production; (2) Defendants failed to credit their tree planting workers for compensable preliminary work, by declining to record work Plaintiffs did loading trees prior to the planting day; (3) Defendants recorded longer lunch breaks than the workers actually took; (4) Defendants deducted from Plaintiffs' work hours time spent traveling from one work location to another, after the commencement of the work day; and (5) Defendants falsely reported reduced work hours for slower planters, in order to evade wage payment obligations.

While there is substantial evidence in the record demonstrating that the violations alleged by Plaintiffs occurred and that the violations were "intentional" within the meaning of the AWPA, Defendants aptly point out that over the 7-year limitations period that applies in this action, Defendants had roughly 4,000 employees from approximately 250 crews reporting to well over 75 different crew leaders

throughout the planting seasons. A season itself consisted of at least three months of planting, but generally six months for some crews. There were roughly 5 to 6 days of planting a week. For each day of planting or spraying, the crew leaders kept the aforementioned daily sheets. The number of daily sheets relevant to this action exceeds 50,000. Yet, the daily sheets that Plaintiffs rely on to support entry for partial summary judgment total close to only 100.

Plaintiffs move for entry of partial summary judgment also based, in part, on the deposition testimony of 15 of the 16 crew leaders who were deposed in the action. Some crew leaders or field supervisors did admit to making mistakes in record keeping, on occasion, and to taking actions that would run afoul of the AWPA's record keeping provisions, such as compensating workers who helped load seedlings for planting by adding trees, which those workers did not actually plant, to their piece rate records of trees planted on the daily sheets. Still, the Court cannot conclude on this evidence, alone, that the violations were so widespread so as to warrant a finding of liability with respect to the class.

Unlike many other cases where partial summary judgment has been granted to plaintiffs as to record keeping violations, the violations in this case are not undisputed or blatantly widespread. *See Cardenas v. Farms*, No. IP 98–1067–C T/G, 2000 WL 1372848, at *13 (S.D.Ind. Sept.19, 2000) (granting partial summary judgment where "[t]he record contain[ed] no evidence that the [defendants] made, kept or preserved pay records or pay statements for each Worker Plaintiff" and where the defendants "fail[ed] to provide to each worker for each pay period an itemized statement of the information required in § 1821(d)(1)"); *Elizondo v. Podgorniak*, 70 F.Supp.2d 758, 777 (E.D.Mich.1999) (granting plaintiffs summary judgment where defendants admitted that they did not make, keep, or preserve the number of hours plaintiffs worked); *Cruz v. Vel–A–Da, Inc.*, No. 3:90CV7087, 1993 WL 659255, at *4 (N.D.Ohio Jan.8, 1993) (granting summary judgment where the defendants admitted that their records listed the labor of multiple individuals under a single worker's name and where the defendants failed to provide the information required in § 1821(d)(1) to each worker for each pay period). The Court therefore takes great caution before finding the existence of liability on a class-wide basis.

Plaintiffs do rely on the report of an expert witness, Jorge J. Rivero, to support their position that the record keeping violations in this case were widespread. However, Defendants challenge whether Mr. Rivero's expert report should be considered. Four months after briefing on this partial summary judgment motion concluded, Defendants moved the Court to exclude Mr. Rivero as an expert witness and to strike his expert report. Defendants specifically urge in that motion that the Court should not consider the report in adjudicating this pending summary judgment motion. After reviewing Defendants' Motion to Strike and the briefing related thereto, the Court has determined that an evidentiary hearing should be held to determine the admissibility of Mr. Rivero's testimony. Further, because the present record, without considering Mr. Rivero's testimony, does not demonstrate that Plaintiffs are entitled to summary judgment, the Court finds that Plaintiffs' Motion for Partial Summary Judgment Finding Violations of AWPA Recordkeeping Requirements should be denied without

prejudice at least until such time as this Court can conduct the hearing pursuant to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and determine whether Mr. Rivero's expert report is admissible.

The Court likewise finds that Defendants' Motion for Partial Summary Judgment seeking a determination that their payroll information meets the AWPA's requirements as to 29 U.S.C. § 1821(d)(2) is likewise due to be denied at this time. Subsection (d)(2) specifically requires that the pay stubs distributed to workers contain the information required by subsection (d)(1). If the information required by subsection (d)(1) is inaccurate, as Plaintiffs maintain and have shown with some of the evidence in the record, then the pay stubs provided to the employees are likewise inaccurate and do not comply with § 1821(d)(2). *See Sanchez*, 845 F.Supp. at 1190. Nevertheless, before ruling as a matter of law that Defendants did or did not comply with § 1821(d)(2) with respect to the Plaintiff class, the Court will consider the admissibility of Plaintiffs' proposed expert testimony.

### E. *Damages Cap for AWPA Claims*

■ Defendants next move the Court for a summary judgment determination that damages under the AWPA are limited to $500,000, since this case has been certified as a class action. This summary judgment request presents solely a legal issue about which the parties disagree.

Section 1854(c)(1) of Title 29 of the United States Code provides the following regarding the damages cap typically imposed when a class action is certified in an action brought under the AWPA:

> If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief, except that (A) multiple infractions of a single provision of this chapter or of regulations under this chapter shall constitute only one violation for purposes of determining the amount of statutory damages due a plaintiff; and (B) if such complaint is certified as a class action, the court shall award no more than the lesser of up to $500 per plaintiff per violation, or up to $500,000 or other equitable relief.

29 U.S.C. § 1854(c)(1).

Having considered the arguments made by the parties with respect to the proper interpretation of § 1854(c)(1), the Court agrees with Plaintiffs' analysis, which mirrors the analysis of the one other court to have considered this specific issue, *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1291, 1305 (M.D.Fla.2000). Finding that the statute is ambiguous and based on the legislative history presented by Plaintiffs, the Court concludes that the cap of $500,000.00 mentioned in § 1854(c)(1)(B) applies only to statutory damages and that there is no limit on the amount of actual damages that the Court can award. Defendants' request for summary judgment as to this issue is therefore denied.

### F. *Agreement to Guarantee 40 Hours of Work*

■ Defendants next seek summary judgment on Plaintiffs' claim that Defendants violated the AWPA by failing to guarantee Plaintiffs pay for at least 40 hours' work each week. As shown below, this request for summary judgment is also due to be denied.

In order to obtain permission to secure visas for H2–B workers, Mr. Eller files an ETA–750 form with the Department of Labor certifying the need for nonimmigrant alien labor. In the space marked "Total Hours Per Week," Mr. Eller puts "40." The ETA–750 form is prepared by Mr. Eller and submitted to the Department of Labor for approval but is not furnished to the workers. The disclosure provided to the workers states that their supervisors will determine the number of hours they work each week.

Defendants' request for summary judgment is based on a contract theory. In this regard, Defendants urge that the Court must look only at what the disclosures provided to the Plaintiff class informed regarding the hours they would work per week. As mentioned, *supra*, those documents state that their supervisors would determine the numbers of hours they work each week. Defendants further argue that statements made on the ETA–750 form could not be used by Plaintiffs as a basis for asserting breach, as Plaintiffs and the Rule 23(b)(3) class members were never provided these forms. Rather, Defendants sent these forms to the Department of Labor.

The flaw with Defendants' legal argument is that Plaintiffs have not plead this particular claim in contract but under the AWPA. Specifically, Plaintiffs allege that Defendants' clearance order certifications to the Department of Labor—stating, *inter alia*, that Eller offers 40 weekly hours of work—were incorporated into their working arrangement under the AWPA. According to Plaintiffs, Defendants could not have been certified to employ H–2B guestworkers in the Plaintiff class had Defendants offered less than full-time employment. In this regard, Congress speci-

fied that U.S. workers already employed in the industry for which H–2B workers are sought could not be harmed by the employment of foreign workers. 20 C.F.R. § 655.0(a). The Department of Labor determined that an employer must provide "full-time" employment to its H–2B employees in order not to adversely affect those similarly-situated U.S. workers. (*See* Pls.' Ex. 160 & 161.)

Courts considering whether statements in clearance orders are incorporated into worker's working arrangements under the AWPA have resolved this issue in the manner that Plaintiffs urge here. That is, courts have found that terms of employment submitted to the Department of Labor by the employers of AWPA-covered workers are incorporated into the workers' § 1822(c) working arrangements. *Donaldson v. United States Dep't of Labor*, 930 F.2d 339, 350 n. 13 (4th Cir.1991); *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir.1985) (decided under AWPA's predecessor statute); *Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 133 (3d Cir.1984) (same). While neither of these courts, has addressed the precise issue presented here, the Court still finds these decisions persuasive.

■ Further, that Plaintiffs never saw the ETA–750 form listing the 40 hours of employment is not dispositive of whether Plaintiffs can recover for their working arrangement claim. As support for this position, Plaintiffs cite *Villalobos v. Vasquez–Campbell*, No. EP–89–CA–27, 1991 WL 311902, at *4 (W.D.Tex. Nov.15, 1991). In *Villalobos*, a working arrangement claim was sustained, although the employer had not provided the workers disclosures containing the terms and conditions of their employment. The court suggested that employers should still be held to "the

terms of the deal." *Id.* Thus, while Plaintiffs in this case were not recipients of the application Defendants made to get H–2B work visas, the privity requirements of contract law are inapplicable to Plaintiffs' statutory claim to enforce a working arrangement.

Accordingly, in this case, Defendants "promise[d][ ] full-time employment" in their clearance orders submitted to the Department of Labor. (*See* Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment at 28.) Defendants interpreted full-time employment as "40" hours and indicated that "40" hours would be the workers' "Total Hours Per Week." This promise of 40 hours became a term of Defendants' deal with Plaintiffs. In other words, this promise of 40 hours became a term of the work arrangement, which is actionable through 29 U.S.C. § 1822(c).

### G. *Deeds*

■ Defendants next seek summary judgment on Plaintiffs' claim that requiring some of them to leave deeds or other collateral as a condition of accepting employment with Defendants in the United States violated 29 U.S.C. § 1856 because it resulted in "forced labor and/or trafficking into servitude." (First Am. Compl. ¶ 25.) The court denies this request for summary judgment, as the Court finds that a genuine issue of material fact remains concerning whether Plaintiffs initiated the practice of leaving deeds as collateral or whether Defendants established this practice as a new work requirement.

### H. *Statute of Limitations for AWPA Claims*

Defendants finally seek a determination from this Court that a two-year statute of limitations period applies to Plaintiffs' AWPA claims. This Court has already ruled that the six-year statute of limitations period provided in O.C.G.A. § 9–3–24 applies to the AWPA claims. *See De Leon–Granados v. Eller and Sons Trees, Inc.,* 452 F.Supp.2d 1282, 1284 (N.D.Ga. 2006). The Court will not revisit that ruling here, as the Court continues to agree with the reasoning underlying the ruling. Accordingly, the Court denies Defendants summary judgment with respect to this issue.

## VI. CONCLUSION

Based on the foregoing and to the extent set forth herein, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment Finding Employer Status of Defendant Jerry Eller [Doc. No. 173]; **DENIES in part** and **DENIES as moot in part** Defendants' Motion for Partial Summary Judgment [Doc. Nos. 190 & 195];[13] **GRANTS** Plaintiffs' Motion for Partial Summary Judgment Related to Unreimbursed Expenses [Doc. No. 207]; **DENIES** Plaintiffs' Motion for Partial Summary Judgment Finding Violations of AWPA Recordkeeping Requirements [Doc. No. 208] at least until such time as the Court conducts the evidentiary hearing on Defendants' Motion to Strike Plaintiffs' Expert Witness Jorge Rivero; and **DENIES** Defendants' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 [Doc. No. 316].

13. As with Plaintiffs' Motion for Partial Summary Judgment Finding Violations of AWPA *Recordkeeping Requirements,* the portion of Defendants' Motion for Partial Summary Judgment seeking a determination that Defendants complied with 29 U.S.C. § 1821(d)(2) is denied at least until such time as the Court conducts the evidentiary hearing on Defendants' Motion to Strike Plaintiffs' Expert Witness Jorge Rivero.

Further, in connection with Plaintiffs' Motion for Partial Summary Judgment Related to Unreimbursed Expenses, Plaintiffs and opt-in Plaintiffs are entitled to partial summary judgment in the amount of $53,890.86 and are hereby **AWARDED** the same.