Elvis MOODIE, Rayon Fisher, Desmond Ellis, and Keisha Collins–Ennis, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

KIAWAH ISLAND INN COMPANY, LLC, d/b/a Kiawah Island Golf Resort, Defendant.

No. 2:15–cv–1097–RMG.

United States District Court, D. South Carolina, Charleston Division.

Signed Aug. 4, 2015.

**714**

James M. Knoepp, Southern Poverty Law Center, Lucy Clark Sanders, Nancy Bloodgood, Foster Law Firm, Daniel Island, SC, Michelle Rose Lapointe, Sarah Marion Rich, Atlanta, GA, for Plaintiffs.

Cherie Wilson Blackburn, Mary Hughes Cherry, Nexsen Pruet, James B. Hood, Hood Law Firm, Charleston, SC, David John Garrett, Raleigh, NC, for Defendant.

### ORDER

RICHARD MARK GERGEL, District Judge.

This matter is before the Court On Defendant's partial motion to dismiss, (Dkt. No. 12). For the reasons stated below, the motion is GRANTED IN PART AND DENIED IN PART.

### I. FACTS[1]

Defendant operates a resort on Kiawah Island, South Carolina. (Dkt. No. 1 at ¶ 17). Defendant applied for temporary labor certifications with the U.S. Department of Labor (DOL) to employ foreign workers at its resort in 2012, 2013, and 2014. (Id. at ¶ 22). In doing so, Defendant attested that it would abide by applicable regulatory requirements pertaining to the H–2B temporary worker program and federal and state laws, including the requirement that Defendant pay its H–2B workers at least the H–2B prevailing wage. (Id. at ¶ 23). DOL approved these applications, allowing Defendant to import H–2B workers for the 2012–2015 seasons. (Id. at ¶ 24). Plaintiffs are Jamaican residents imported by Defendant under the H–2B program.

#### A. Pre-employment Expenses

Defendant contracted with Florida East Coast Travel Services, Inc. (FLECTS) to act as its agent and to assist in obtaining

H–2B workers from Jamaica, including Plaintiffs. (Id. at ¶ 30). FLECTS and the Jamaican Ministry of Labour and Social Security ("Ministry of Labour") organize and administer the process by which prospective H–2B workers for Defendant are hired and obtain H–2B visas. (Id. at ¶ 31). Prospective H–2B workers first interview with Defendant personnel in Jamaica. (Id. at ¶ 32). Plaintiffs interviewed in Montego Bay, Jamaica. (Id.). Defendant then notifies the Ministry of Labour which individuals it would like to hire for the season and which individuals it would like to re-hire from prior seasons. (Id. at ¶ 33).

The Ministry of Labour notified Plaintiffs that they had been hired or re-hired and had to travel to Kingston, Jamaica to undergo medical processing as a condition of obtaining their H–2B visas. (Id. at ¶ 34). Plaintiffs paid for the round-trip transportation from their homes to Kingston and were not reimbursed by Defendant for these expenses. (Id. at ¶ 35). Those that passed medical testing, including Plaintiffs, were then required to travel to Kingston again for their H–2B visa interviews at the U.S. Embassy, a prerequisite to beginning work for Defendant. (Id. at ¶ 36). Plaintiffs were not reimbursed by Defendant for this second round trip to Kingston. (Id. at ¶ 36).

Plaintiffs were then required to pay approximately $200–$250 a year for their H–2B visas, another cost not reimbursed by Defendant. (Id. at ¶ 37). Finally, once their H–2B visas were approved, Plaintiffs paid approximately $420 per person to travel from their homes in Jamaica to Defendant's job site in South Carolina. (Id. at ¶ 38). This one-way travel expense to Kiawah was also not reimbursed by Defendant. (Id. at ¶ 38). Plaintiffs allege that these expenses were de facto deductions

1. For the purposes of Defendant's motion to dismiss, the Court accepts as true the facts

alleged in the Complaint, and all facts are viewed in a light most favorable to Plaintiff.

from their wages and that at the time of hiring, Plaintiffs were not informed in writing of the above-listed deductions. (*Id.* at ¶ 44).

Plaintiffs allege that each of the expenses listed above were primarily for the benefit of the Defendant and operated as de facto involuntary deductions from, and/or a kickback of, Plaintiffs' first workweek's wages, resulting in Plaintiffs' wages failing below the federal minimum wage and below the federal prevailing wage mandated under the H–2B program. (*Id.* at ¶ 40–43). Plaintiffs allege violations of the Fair Labor Standards Act (FLSA) for Defendant's failure to pay at least $7.25, the federal minimum wage, for each hour of work during the first workweek. (*Id.* at ¶¶ 76–77). Plaintiffs also allege that Defendant violated the South Carolina Payment of Wages Act (SCPWA) by failing to pay the agreed wages due (i.e., the prevailing wage[2] under the H–2B program) and by failing to provide written notice to Plaintiffs at the time of hiring of these de facto deductions that would be taken from their wages. (*Id.* at ¶¶ 82–87, 89, 91–92). Plaintiffs also allege a breach of contract claim and, in the alternative, a third-party beneficiary breach of contract claim, for failure to pay the H–2B prevailing wage. (*Id.* at 21–23).

## B. Housing and Transportation Costs

While working for Defendant, Plaintiffs lived in an apartment complex in the West Ashley area of Charleston, approximately one hour from the worksite at Kiawah Island. (*Id.* at ¶ 52). Defendant located, arranged for, and controlled the housing for Plaintiffs and other H–2B workers. (*Id.*). Plaintiffs shared apartments with other H–2B workers employed by Defendant. (*Id.* at ¶ 53). Two-bedroom apartments were shared by four Defendant H–2B workers, and three-bedroom apartments were shared by six Kiawah H–2B workers. (*Id.*). Defendant managed specific details of the Plaintiffs' housing, including assigning them to live in specific apartments and distributing keys to those apartments. (*Id.*).

Defendant deducted approximately $165 per person every two weeks from Plaintiffs' paychecks for housing. (*Id.* at ¶ 55). This $165 deduction was made from every paycheck, regardless of how many individuals lived in the apartment and regardless of the number of paychecks received in a given month. (*Id.*). The amount deducted from Plaintiffs' paychecks for housing was approximately twice the market value of such housing. (*Id.* at ¶ 56).

Defendant also arranged for a bus to transport H–2B workers between the apartment complex and the Kiawah Island worksite at specific times every day. (*Id.* at ¶ 54). There are no public transportation options to travel between Kiawah Island and Charleston. (*Id.*). Defendant deducted approximately $36 per person every two weeks from Plaintiffs' paychecks for transportation. (*Id.* at ¶ 57). At the time of hiring Plaintiffs, Defendant did not notify them in writing of these housing and transportation deductions. (*Id.* at ¶ 60).

Plaintiffs allege that the amounts Defendant deducted for housing and transportation were primarily for the benefit of Defendant and were unreasonable. (*Id.* at ¶¶ 57–58). Plaintiffs allege that these deductions caused Plaintiffs' wages to fall below the federal minimum wage and the federal prevailing wage mandated under the H–2B program. (*Id.* at ¶ 59). Again, Plaintiffs allege violations of FLSA for Defendant's failure to pay at least $7.25 per hour due to these deductions and violations of SCPWA for Defendant's failure to pay agreed wages (i.e. the prevailing wage

---

**2.** This prevailing wage is higher than the federal minimum wage. (*See* Dkt. No. 1 at ¶ 48).

under the H–2B program) and failure to provide written notice of these deductions at the time of hiring. (*Id.* at ¶¶ 76, 78, 82–88, 91–92). Plaintiffs also allege a breach of contract claim and, in the alternative, a third-party beneficiary breach of contract claim, for failure to pay the H–2B prevailing wage. (*Id.* at 21–23).

## C. 2013 Supplemental Prevailing Wage

When employers obtain temporary labor certifications from the DOL allowing them to hire H–2B workers, they are required to pay the H–2B workers at least the applicable prevailing wage during the entire period of the labor certification. (*Id.* at ¶ 45). On April 24, 2013, the U.S. Department of Homeland Security and DOL jointly published an Interim Final Rule that revised the methodology by which the DOL calculates the prevailing wages for the H–2B program. (*Id.* at ¶ 46). In June or July of 2013, DOL sent Defendant letters informing it of new prevailing wages applicable to the job categories for which Defendant had requested H–2B workers. (*Id.* at ¶ 47). Under the DOL notifications, the prevailing wage increased for each category of workers. (*Id.* at ¶ 48). After receiving these notifications, Defendant did not increase Plaintiffs' wages. (*Id.* at ¶ 51).

Plaintiffs allege that Defendant's failure to increase Plaintiffs' wages to the prevailing wage under the DOL notifications resulted in a failure to pay the proper overtime rate required by federal law. (*Id.* at ¶ 79). Thus, Plaintiffs allege that Defendant violated FLSA by failing to pay the proper overtime for this portion of the 2013 season. (*Id.* at ¶ 79). Plaintiffs also allege violations of SCPWA and breach of contract claims for failure to pay the H–2B prevailing wage during this period of time. (*Id.* at ¶¶ 82–85, 90–92, 93–107).

Defendant moves to dismiss Plaintiffs' FLSA claims based on (1) the failure to reimburse pre-employment expenses and (2) the DOL notification regarding an increase in the prevailing wage rate but does not move to dismiss Plaintiffs' FLSA claims based on the alleged unreasonable deductions for housing and transportation. (Dkt. No. 12). Defendant also moves to dismiss all of Plaintiffs' state law claims. (*Id.*).

## II. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, a plaintiff must allege facts "sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003), and sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In other words, the well-pleaded facts must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

In considering a motion to dismiss, the Court must accept as true facts alleged in the complaint and "draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dept., Inc. v. Montgomery County, Md.,* 684 F.3d 462, 467 (4th Cir.2012). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" or "allegations that contradict mat-

ters properly subject to judicial notice or by exhibit." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir.2002). The Court is also not required to accept as true the legal conclusions set forth in a plaintiffs complaint. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir.2007). In considering a Rule 12(b)(6) motion, the Court may also "properly take judicial notice of matters of public record," "consider documents attached to the complaint," and consider documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic." *Trimble,* 484 F.3d at 705.

## III. DISCUSSION

### A. FLSA Claims Based on Pre-employment Expenses

The FLSA requires that employers pay its employees a wage of at least $7.25 an hour. 29 U.S.C. § 206(a). An employee's wages must be "free and clear," and an employer violates the FLSA where kickbacks "directly or indirectly to the employer or to another person for the employer's benefit" reduce the employee's compensation below the minimum wage. 29 C.F.R. § 531.35. An employer may charge its employees for the reasonable cost of providing them "board, lodging, or other facilities." 29 U.S.C. § 203(m). Because such charges are not kickbacks, they can be included in the wage calculation. *See id.* However, facilities "primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. §§ 531.3(d)(1), 531.32.

 In other words, employers must pay the minimum wage *in addition to* any expenses that they pay that are primarily

for the benefit or convenience of themselves. "[F]ailing to reimburse plaintiffs for their expenditures is equivalent to the employer paying for these expenses and then improperly deducting them from the employees' pay for the first workweek." *Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F.Supp.2d 117, 125 (E.D.N.C. 2011). Thus, under the FLSA, employers must reimburse costs that are "primarily for the benefit and convenience of the employer" to the extent that having the employee pay them causes wages to fall below the minimum wage for the first week of work. *See Arriaga v. Florida Pac. Farms, L.L.C.,* 305 F.3d 1228, 1236 (11th Cir.2002).

The question before the Court is whether the pre-employment expenses at issue here are "primarily for the benefit and convenience of the employer" such that they must reimbursed to the extent that they cause wages to drop below the minimum wage. *See Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 897 (9th Cir. 2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 2819, 189 L.Ed.2d 785 (2014); *Castellanos–Contreras v. Decatur Hotels, LLC,* 622 F.3d 393, 399 (5th Cir.2010).

#### 1. Inbound Travel and Visa Costs

This Court is not the first to pass on this question, at least as to travel and visa costs. In *Arriaga v. Florida Pac. Farms, L.L.C.,* 305 F.3d 1228 (11th Cir.2002), the Eleventh Circuit analyzed Section 206(a) and applicable FLSA regulations in the context of H–2A employees.[3] Under FLSA regulations "transportation charges where such transportation is an incident of and necessary to the employment" are "primarily for the benefit or convenience

---

3. The H–2A program is for temporary foreign workers brought to the United States "to perform agricultural labor and services," and the H–2B program is for temporary foreign work-

ers brought to the United States "to perform other temporary service or labor ..." 8 U.S.C. § 1101(a)(15)(H)(ii)(a)-(b).

of the employer." 29 C.F.R. § 531.32. The *Arriaga* court held that "one-time transportation costs" to transport temporary foreign workers from their home to the employer's work site in the United States are "incident of and necessary to the employment of H–2A workers" and, therefore, should be reimbursed by the employer to the extent that they bring the workers' wages below the minimum wage for the first week of work. *Id.* at 1242. In doing so, the *Arriaga* court relied on the definitions of "necessary" and "incident to" and found that the one-way transportation costs "are an inevitable and inescapable consequence of having foreign H–2A workers employed in the United States," *Id.* at 1242.

In further support of its conclusion, the *Arriaga* court examined the examples in Section 531.32 and found that they "show a consistent line being drawn between those costs arising from the employment itself and those that would arise in the course of ordinary life." *Id.* It found that the one-way transportation costs of temporary workers "go beyond basic commuting are not necessarily going to arise from the employment relationship" generally. *Id.* These expenses do not arise in ordinary life but are direct result of employers being "unable to employ local workers who would not require such transportation costs." *Id.*

The *Arriaga* court similarly held that the H–2A visa costs were "not costs that would arise as an ordinary living expense" and that "[w]hen an employer decides to utilize the H–2A program these costs are certain to arise, and it is therefore incumbent upon the employer to pay them ... up to the point where the minimum wage is met." *Id.* at 1244.

The *Arriaga* decision has been universally followed in the context of H–2A employees. *See, e.g., Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 899 (9th Cir. 2013) (one-way travel expenses for H–2A workers primarily for the benefit of employer), *cert. denied,* —— U.S. ——, 134 S.Ct. 2819, 189 L.Ed.2d 785 (2014); *Salazar–Martinez v. Fowler Bros.,* 781 F.Supp.2d 183, 195 (W.D.N.Y.2011) ("[T]his Court finds that pre-employment travel and visa expenses are primarily for the benefit of the employer, and therefore, must be reimbursed to the extent that such expenses reduce an employee's wages in the first workweek below the minimum wage."); *Martinez–Bautista v. D & S Produce,* 447 F.Supp.2d 954, 964 (E.D.Ark. 2006) (finding *Arriaga's* "reasoning persuasive" and concluding "that each Plaintiff may be reimbursed for the individual bus fares and the H–2A visa fees paid, to the extent that such fares and fees reduced the first workweek's pay below the minimum wage"); *De Luna–Guerrero v. N. Carolina Grower's Ass'n, Inc.,* 338 F.Supp.2d 649, 661–62 (E.D.N.C.2004) (one-way travel and visa costs of H–2A workers primarily for the benefit of the employer).

Defendant argues that because H–2A regulations require reimbursement of inbound travel expenses and the applicable H–2B regulations do not,[4] these cases and their analysis should not apply in the H–2B context. (Dkt. No. 27 at 2–3). Like other courts, this Court rejects this argument and finds *Arriaga* persuasive. *See De Leon–Granados v. Eller & Sons Trees, Inc.,* 581 F.Supp.2d 1295, 1309 (N.D.Ga. 2008) ("*Arriaga* is highly persuasive precedent for the proposition that the travel and visa costs incurred by [H–2B] Plaintiffs were 'for the primary benefit and conven-

---

4. The H–2B regulations now require employers to pay inbound travel and visa costs. *See* 20 C.F.R. § 655.200 (2015). However, the H–2B regulations in place during the applicable time period here did not.

ience' of Defendants and thus are not 'other facilities' that can be counted as wage credits pursuant to 29 U.S.C. § 203(m)."); *Rosales v. Hispanic Employee Leasing Program, LLC,* No. 1:06–CV–877, 2008 WL 363479, at *1 (W.D.Mich. Feb. 11, 2008) (concluding that "the holding of the Eleventh Circuit in *Arriaga* [ ] applies in a case such as this involving workers under the H–B2 visa program."); *Recinos–Recinos v. Express Forestry, Inc.,* No. CIV.A. 05–1355, 2006 WL 197030, at *14 (E.D.La. Jan. 24, 2006) ("The *rationale* employed by the *Arriaga* court is applicable to the H2–B program.") (emphasis in original).

"*Arriaga* is an FLSA case which does not hinge on any differences between the H–2A and the H–2B guestworker programs." *Recinos–Recinos,* 2006 WL 197030, at *14; *see also De Leon–Granados,* 581 F.Supp.2d at 1309 ("Defendants' obligations under the FLSA exist independent of the H–2B regulations, and Defendants are bound by the FLSA's minimum wage provision, 29 U.S.C. § 206, regardless of what the H–2B regulations may require."). Its rationale is equally applicable to H–2B employment, and courts have explicitly adopted its rationale in the H–2B context.[5] *See, e.g., Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F.Supp.2d 117, 126 (E.D.N.C.2011) ("Transportation charges are an inevitable and inseparable consequence of having foreign nationals employed in the United States pursuant to an H–2B visa. These costs are 'an incident of and necessary to the employment' and are 'primarily for the benefit of the employer.' "); *Teoba v. Trugreen Landcare LLC,* 769 F.Supp.2d 175, 185 (W.D.N.Y.2011) ("[T]his Court determines that visa and transportation costs of H–2B employees are unique costs of doing business, primarily benefitting employers, which cannot be passed on to employees either directly or indirectly, if doing so would reduce the employees' wages below minimum wage."); *Rivera v. Brickman Grp., Ltd.,* No. CIV. 05–1518, 2008 WL 81570, at *12 (E.D.Pa. Jan. 7, 2008) ("I agree with the *Arriaga* decision that, in such circumstances, point-of-hire transportation is primarily for the employer's benefit, both because it is dissimilar to lodging and board, and because the expense arises out of [Defendant's] decision actively to recruit workers in foreign countries."). Indeed, the Eleventh Circuit itself has applied *Arriaga* in the H–2B context. *See Morante–Navarro v. T & Y Pine Straw, Inc.,* 350 F.3d 1163, 1166 n. 2 (11th Cir. 2003).

This Court agrees with this strong weight of authority. The Court finds no

---

5. The one notable exception is the Fifth Circuit's 8–6 majority en banc decision in *Castellanos–Contreras v. Decatur Hotels, LLC,* 622 F.3d.393 (5th Cir.2010). There, the majority found that the lack of H–2B regulations requiring reimbursement should "end the matter as to both the travel and visa expenses" and found employers did not need to reimburse such expenses under the FLSA. *Id.* at 400. This Court agrees with the dissent in *Castellanos–Contreras* that the majority's "reasoning fails to recognize that the FLSA is a separate statutory scheme with distinct regulations that must be given their own meaning and effect" and that "there is no reasoned basis on which to distinguish between H–2A and H–2B workers" for these purposes. *Id.* at 416, 420 (Dennis, J., dissenting).

Furthermore, the *Castellanos–Contreras* majority noted that its decision interpreted a "regulatory landscape" no longer in effect and that it did not consider DOL's Field Assistance Bulletin No.2009–2 because it was "issued long after the events in question." *Id.* at 401, 401 n. 9. DOL's Field Assistance Bulletin No. 2009–2, ignored by the Fifth Circuit majority, was issued prior to the events in question here, and interprets the FLSA to require the reimbursement of such expenses for H–2B employees to the extent necessary to ensure a minimum wage. Because Plaintiffs have not argued that this bulletin should receive deference and because the Court reaches the same conclusion independently, the Court does not determine what, if any, deference should apply to the bulletin.

reasonable basis to distinguish the costs of visas and inbound travel for H–2A and H–2B workers. Under both visas, Plaintiffs can only work for one particular employer. The inbound travel is to a specific work site to provide services for a specific employer. Under these circumstances, the travel and visa costs are primarily for the benefit of the employer.

■ Finally, Defendant argues that "[t]aking the *Arriaga* court's logic to its ultimate conclusion would potentially subject employers across the U.S. to a requirement to pay relocation expenses for all newly hired employees—or at least to pay relocation expenses for all newly hired foreign employees." (Dkt. No. 27 at 3). This is not true. Plaintiffs are not permanently **relocating** to the United States. They are still residents of Jamaica and return there after several months of work in the United States. H–2B workers are, by definition, **temporary** foreign workers that are traveling to a **temporary** work site in the United States for the benefit of the employer. Furthermore, "visa and transportation costs of H–2B employees are unique costs of doing business" for companies importing such labor and "an incident of and necessary to" such employment. *Teoba,* 769 F.Supp.2d at 185. Therefore, the Court finds that costs of inbound travel and visas for H–2B workers are "primarily for the benefit of the employer" and denies Defendant's motion to dismiss these claims.

### 2. Medical Processing Fees

■ Defendant argues that medical examinations are not required for Plaintiffs to obtain H–2B visas and, therefore, any claim based expenses related to such examinations should be dismissed. (Dkt. No. 12 at 13–14). Regardless of whether U.S. law requires a medical examination, the Ministry of Labour informed Plaintiffs that they were required to undergo medical processing to obtain their H–2B visas, and Plaintiffs were not interviewed by the U.S. Embassy until they passed this medical testing. (Dkt. No. 1 at ¶¶ 34–36).[6] Under these facts, the medical testing was primarily for the benefit of Defendant. Plaintiffs did not receive medical care, but underwent medical testing. It is not even clear if Plaintiffs received the results from such testing other than to learn that they "passed." Plaintiffs were not interviewed by the U.S. Embassy, a requirement for obtaining an H–2B visa, until they passed this medical testing. This testing, like the H–2B visas, served no purpose other than to allow Plaintiffs to work for Defendant on H–2B visas. Therefore, the Court finds these costs, as alleged, are primarily for the benefit of Defendant, and Defendant's motion to dismiss these claims is denied.

### B. FLSA Claim Based on DOL's Change in the Prevailing Wage

Under the FLSA, employers must pay employees who work more than forty (40) hours a week at least "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). When a law other than the FLSA sets a minimum wage higher than that set by the FLSA, the "regular rate" is at least this higher minimum wage. 29 C.F.R. § 778.5. The H–2B regulations provide for a "prevailing wage" that employers must pay H–2B workers. *See* 20 C.F.R. §§ 655.10(b)(6), 655.20(e) (2008).[7] For the jobs at issue

---

6. The Court must assume these facts as true for the purposes of this motion.

7. The parties both agree that the 2008 regulations are generally applicable here. (*See* Dkt. No. 12 at 7 n. 1; Dkt. No. 22 at 4 n. 3). The

current H–2B regulations were effective on April 29, 2015, after the events at issue here. *See* Wage Methodology for the Temporary Non–Agricultural Employment H–2B Program, 80 Fed.Reg. 24146 (Apr. 29, 2015).

here, this prevailing wage was higher than the federal minimum wage. (*See* Dkt. No. 1 at ¶ 48). Thus, the prevailing wage is the "regular rate" of pay for purposes of the FLSA overtime statute.

In 2013, DOL notified Defendant of a change in the prevailing wage for categories of H–2B workers employed by Defendant. (Dkt. No. 1 at ¶¶ 45–51). Defendant did not increase Plaintiffs' wages after receiving this notification. (*Id.* at ¶ 52). Plaintiffs allege that Defendant's failure to increase wages to this new prevailing wage resulted in a violation of the FLSA overtime provision. (*Id.* at ¶ 79). Defendant contends that a decision of the Board of Alien Labor Certification Appeals, discussed in detail below, bars Plaintiffs' claim. (Dkt. No. 12 at 8–11; Dkt. No. 27 at 4). Before addressing the parties' arguments, the Court finds it helpful to review the regulatory background and how the new 2013 prevailing wage determination came about.

*1. Regulatory Background*

Before petitioning the U.S. Department of Homeland Security (DHS) for H–2B visas, an employer must obtain a "temporary labor certification" from the DOL. 8 C.F.R. § 214.2(h)(6)(iii)(A). This certification is "advice . . . on whether or not United States workers capable of performing the temporary services or labor are available and whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers." *Id.* DOL issued final regulations governing this temporary labor certification process for H–2B visas on December 19, 2008. 73 Fed.Reg. 78020 (Dec. 19, 2008).

Under these regulations, an employer must obtain a prevailing wage determination from the National Prevailing Wage Center (NPWC) and first attempt to recruit U.S. workers for the job at this prevailing wage. 20 C.F.R. §§ 655.10(a), 655.15(d) (2008). These regulations defined the prevailing wage, with certain exceptions, as "the arithmetic mean . . . of the wages of workers similarly employed at the skill level in the area of intended employment." 20 C.F.R. § 655.10(b)(2) (2008) ("2008 Wage Rule"). The "skill level" computation that DOL used was a four-tier wage structure. To determine the average of such wages, the NPWC used the wage component of the Bureau of Labor Statistics Occupational Employment Statistics Survey (OES) or an acceptable survey by the employer. *Id.*

On August 30, 2010, the District Court for the Eastern District of Pennsylvania, found the phrase "at the skill level" in this regulation in valid under the Administrative Procedures Act (APA) because the DOL had never articulated a satisfactory explanation "for using skill levels as part of H–2B prevailing wage determinations." *Comite De Apoyo A Los Trabajadores Agricolas v. Solis,* No. CIV.A. 09–240, 2010 WL 3431761, at *19 (E.D.Pa. Aug. 30, 2010) ("*CATA I*"). The *CATA I* court

---

The District Court for the Northern District of Florida enjoined the use of the 2012 regulations, 77 Fed.Reg. 10038 (Feb. 21, 2012), and that ruling was affirmed by the Eleventh Circuit. *See Bayou Lawn & Landscape Servs. v. Sec'y of Labor,* 713 F.3d 1080, 1083 (11th Cir.2013) (affirming preliminary injunction); *Bayou Lawn & Landscape Servs. v. Perez,* 81 F.Supp.3d 1291 (N.D.Fla.2014) (permanent injunction). Thus, the DOL operated under the 2008 regulations following the *Bayou*

*Lawn* decision. The District Court for the Northern District of Florida also eventually enjoined the use of the 2008 regulations. *See Perez v. Perez,* Case No. 3:14–cv–682 (Mar. 4, 2015), *available at* Dkt. No. 22–1. However, the court vacated the 2008 regulations on March 4, 2015, after the events at issue here took place, and less than two months before the 2015 regulations became effective. (*See id.*).

also found invalid the use of OES data, holding that "the choice of data sets" was made without proper notice and comment under the APA. *Id.* The *CATA I* court did not vacate the regulations, but instead remanded the issue to DOL ordering that "DOL shall promulgate new rules concerning the calculation of the prevailing wage rate in the H–2B program that are in compliance with the Administrative Procedure Act no later than 120 days from the date of this order." *Id.* at \*27. In a later order, the court clarified that "the 120–day deadline was for publication of new rules, not for the effective date of new rules." *Comite de Apoyo a Los Trabajadores Agricolas v. Solis*, No. CIV.A. 09–240, 2010 WL 4823236, at \*1 (E.D.Pa. Nov. 24, 2010).

Following this decision, the DOL issued a Notice of Proposed Rulemaking and then a final rule on January 19, 2011 ("2011 Wage Rule"). 76 Fed.Reg. 3452 (Jan. 19, 2011). In the preamble to this regulation, the DOL found that the 2008 Wage Rule "artificially lowers [ ] wage[s] to a point that [they] no longer represent[ ] market-based wage[s] for the occupation" and resulted in an adverse effect on U.S. workers' income. *Id.* at 3463, 3477. Thus, DOL concluded that the 2008 Wage Rule violated the Immigration and Nationality Act (INA), which only allows H–2B visas when, among other things, "(1) unemployed persons capable of performing such services cannot be found in this country; and (2) the employment of such aliens will not adversely affect the wages and working conditions of United States workers." *See Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F.Supp.2d 700, 703–04 (E.D.Pa.2013) ("*CATA II*").

The 2011 Wage Rule, however, never went into effect. The DOL initially set January 1, 2012, as the rule's effective date. 76 Fed.Reg. 3452, 3452. However, Congress included riders in appropriation bills barring the DOL from expending funds to implement the rule, and, therefore, DOL kept delaying its effective date. *CATA II*, 933 F.Supp.2d at 708. These appropriation riders effectively barred implementation of the rule, so the DOL continued to apply the 2008 Wage Rule. *See id.*

On March 21, 2013, the District Court for the Eastern District of Pennsylvania, entered a permanent injunction ordering that the DOL stop using the 2008 Wage Rule within thirty (30) days. *CATA II*, 933 F.Supp.2d at 716. While *CATA I* was based on procedural errors (e.g., lack of notice and comment) and did not vacate the regulation, *CATA II* did vacate the regulation, holding that, given the DOL's finding that the 2008 Wage Rule depressed U.S. wages, the DOL lacked authority to issue labor certifications under the 2008 rule. *Id.* at 711. The court stated that "Congress has directly spoken to the issue before us and has precluded the DOL from granting H–2B labor certifications absent confirmation that an 'alien's employment will not adversely affect wages and working conditions of similarly employed United States workers.'" *Id.* at 713.

Following *CATA II*, the DOL and DHS issued a new Interim Final Rule, effective immediately on April 24, 2013. 78 Fed. Reg. 24047, 24048 (Apr. 24, 2013). This rule revised the methodology that DOL uses to calculate prevailing wages. The rule deleted the phrase "at the skill level," which had been invalidated, and defined the prevailing wage as "the arithmetic mean ... of the wages of workers similarly employed in the area of intended employment." 20 C.F.R. § 655.10(b)(2) (2013). This rule retained use of OES data unless the employer provided an acceptable survey. *Id.*

Pursuant to the new Interim Final Rule, the DOL issued supplemental prevailing wage determinations (a determination for

each category of worker) to Defendant during the 2013 season. (Dtk. No. 1–2). The DOL stated that it would issue such supplemental prevailing wage determinations in the preamble to the Interim Final Rule:

> To come into compliance with the court's order [in *CATA II* ] and to ensure that DHS and DOL fulfill the statutory mandate to protect the domestic labor market, DHS and DOL must immediately set new and legally valid prevailing wage rate standards to allow for an immediate adjustment of the wage rates for these currently employed workers. Further delay in setting a legally valid prevailing wage regime will cause continued harm to U.S. workers, foreign workers, and the domestic labor market.

78 Fed.Reg. 24047, 24056 (Apr. 24, 2013).[8] The notifications sent to Defendant stated that "[i]n accordance with the employer's declaration in Appendix B.1, the employer is responsible for compliance with this supplemental prevailing wage determination (PWD) upon receipt of notification by DOL." (*Id.*) The certification provided by Defendant with its application for a temporary labor certification states that "[t]he offered wage equals or exceeds the highest of the most recent prevailing wage that is or will be issued by the Department to the employer ..." (Dkt. No. 1–3 at 10). Defendant received these notifications but did not increase the wages paid to Plaintiffs. (Dkt. No. 1 at 51; Dkt. No. 12 at 8).

### 2. *Island Holdings*

Defendant relies heavily on a decision of the Board of Alien Labor Certification Appeals (BALCA), *In the Matter of Island Holdings, LLC*, 2013–PWD–00002 (BALCA Dec. 3, 2013). BALCA is an administrative tribunal in the DOL that, upon appeal by an employer, reviews certifying officers' decisions to deny a temporary labor certification, decisions to revoke labor certifications, and prevailing wage determinations. 20 C.F.R. §§ 656.27(c) (2008); *see also* 20 C.F.R. § 655.11 (2008).

In *Island Holdings,* an employer that received a supplemental wage determination in 2013, similar to those received by Defendant, administratively appealed that determination to the BALCA.[9] The BALCA vacated these supplemental wage determinations finding that (1) DOL lacked the authority to issue supplemental wage determinations and (2) the declarations in applications for temporary labor certifications did not bind employers. 2013–PWD–00002.

The CATA plaintiffs attempted to challenge this decision, but the CATA court held that plaintiffs lacked Article III standing because "[t]he record does not show any agency action applying BALCA's rulings in *Island Holdings* to Plaintiffs." *Comite de Apoyo a los Trabajadores Agricolas v. Perez,* 46 F.Supp.3d 550, 561 (E.D.Pa.2014) (*CATA III* ). The *CATA*

---

**8.** Notably, before the DOL issued the Interim Final Rule and these supplemental prevailing wage determinations, the *CATA* court held that

> Nothing in § 655.10(d), nor any related regulation, prevents the DOL from devising interim measures to reduce the impact of the deficient methodology. Thus an employer must pay a valid wage for the duration of employment, but it does not follow that an employer must continue paying that wage after it has been deemed to be the product of an invalid regulation.

*Comite de Apoyo a Los Trabajadores Agricolas v. Solis,* No. CIV.A. 09–240, 2010 WL 4823236, at *1 (E.D.Pa. Nov. 24, 2010).

**9.** Defendant did not appeal the supplemental wage determinations issued to it. The supplemental wage determination stated that any redetermination request had to be submitted within thirty (30) days of the notice in accordance with 20 C.F.R. § 655.10(g). (Dkt. No. 1–2 at 3).

*III* court also found that the BALCA's decision was not a final agency action as "[i]t is ... the Secretary of Labor, and not BALCA, that ultimately makes the policies and rules governing H–2B prevailing wages." *Id.* at 561–62.

After *CATA · III,* the DOL issued an Intent to Issue Declaratory Order stating that

> The BALCA's Island Holdings decision does not reflect the legal position of the Secretary of Labor because the BALCA erroneously rejected the Secretary of Labor's own plain interpretation of the relevant regulatory provisions, as reflected in the preamble to the [Interim Final Rule] and a separate notice amending ETA Form 9142, requiring H–2B employers to attest that they will pay at least the prevailing wage that "is or will be issued by the Department" during the course of the certified employment.

Intent To Issue Declaratory Order, 79 FR 75179–01, 75182 (Dec. 17, 2014). The DOL asserted that "DOL's issuance of supplemental prevailing wage determinations under the IFR is authorized by the contractual conditions to which ˙the employers agreed when signing ETA Form 9142, Appendix B.1." *Id.* at 75183. The DOL also stated that BALCA lacked the authority to issue such a holding and that "[t]he Secretary proposes issuing a declaratory order to overrule the BALCA's decision and legal conclusions in Island Holdings." *Id.* The DOL sought comment from the public on the issue, *id.* at 75183–84, and has not yet issued such a declaratory order.

### *3. Discussion*

The Court denies Defendant's motion to dismiss this claim. The Court finds that

Defendant has failed to state a basis for dismissal in the motion before it. While Defendant's argument is not clear, Defendant appears to˙argue that the existence of a claim turns on DOL's position regarding the supplemental wage determinations. (*See* Dkt. No. 12 at 11 ("Until the DOL revives the SPWDs, if indeed it even can, Plaintiffs have no justiciable claim ...")). Defendant has not briefed the underlying issues in *Island Holdings* but argues that BALCA's decision bars a claim until DOL issues a declaratory order.[10] (Dkt. No. 27 at 4 ("Only if the DOL issues its declaratory order overruling *Island Holdings,* could Plaintiffs have a cognizable claim.")). However, Defendant does not explain why the existence of the BALCA decision bars Plaintiffs' claims. The BALCA decision does not bind the Secretary of Labor, *CATA III,* ˙46 F.Supp.3d at 562, much less this Court. Therefore, Defendant's motion to dismiss is denied.

### C. Preemption of State Law Claims

 "Congress prescribed exclusive remedies in the FLSA for violations of its mandates," and state law claims that "merely duplicate[] FLSA claims" are preempted by the FLSA. *Anderson v. Sara Lee Corp.,* 508 F.3d 181, 194 (4th Cir.2007). Thus, to the extent that a plaintiff seeks compensation under state law "for overtime pay otherwise required by the FLSA or˙alleges that he received less than˙ the federal minimum wage ..., ... these claims are preempted by the FLSA and must be dismissed." *McMurray v. LRJ Restaurants, Inc.,* No. 4:10–CV–01435–JMC, 2011 WL. 247906, at *2 (D.S.C. Jan. 26, 2011); *see also Nimmons v. RBC Ins. Holdings (USA) Inc.,* No. CIV.A. 6:07–CV–2637, 2007 WL 4571179,

---

**10.** The Court declines to reach the underlying issues raised in *Island Holdings,* including the extent of DOL's authority to issue supplemental wage determinations, when these issues have not been fully briefed by the parties and when DOL has not had an opportunity for providing its position to Court.

at *1 (D.S.C. Dec. 27, 2007) ("Plaintiffs state law claims related to alleged overtime must be dismissed because they assert rights that are duplicative of those protected by the FLSA."). However, claims that are "separate and distinct" from FLSA claims, such as an "alleged failure ... to pay wages which may be in excess of [the federal] minimum wage and failure to pay wages when due" are not preempted by the FLSA. *McMurray*, 2011 WL 247906, at *2.

■ Here, Plaintiffs' state law claims are not "merely duplicative" of their FLSA claims. In their state claims, Plaintiffs seek (1) payment the prevailing wage, which is higher than the federal minimum wage, during the first week of work, (2) payment of the prevailing wage, which is again higher than the federal minimum wage, during other weeks, where Plaintiffs allege Defendant made improper housing and transportation deductions, and (3) the higher supplemental prevailing wage issued by the DOL in 2013 in non-overtime weeks. Plaintiffs have no ability to under the FLSA to seek this compensation. Plaintiffs also seek to enforce notice provisions of the South Carolina Payment of Wages Act that are not contained in the FLSA. Given the "remedial purposes and historical intent of the FLSA," *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263,

1282 (4th Cir.1996), the Court finds that Congress did not intend to bar state law wage claims for which FLSA fails to provide a remedy. Therefore, to the extent Plaintiffs seek payment of the federal minimum wage or payment at the supplemental prevailing wage rate during overtime weeks in their state law claims, Defendant's motion is granted. However, Defendant's motion to dismiss on preemption grounds is otherwise denied.[11]

## D. Count III: Breach of Contract Claims

Plaintiff alleges that "[t]he terms and conditions provided in the temporary labor certification ..., its accompanying attestations, and the law and regulations applicable to the H–2B program constituted the employment contracts between Plaintiffs ... and Defendant." (Dkt. No. 1 at 21). Defendant contends that the temporary labor certifications and H–2B regulations does not constitute a contract between Plaintiffs and Defendant.

■ As an initial matter, the Court agrees with Plaintiffs that they have alleged the existence of an employment contract. Under South Carolina law, an employment contract is created when an employer makes an offer to promise to hire an individual "in return for specified

---

11. Defendant raises in a single sentence on reply that "[t]o the extent that there is a gap between the minimum wage ... and the higher prevailing wage and supplemental prevailing wage, Plaintiffs' claim under the SCPWA fails because it is based on H–2B regulation that have been vacated." (Dkt. No. 27 at 4). "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006). However, even if the Court considered the argument, it would not change the outcome. The 2008 regulations were vacated in their entirety only a few months ago on

March 4, 2015. *See Perez v. Perez*, Case No. 3:14–cv682 (Mar. 4, 2015), *available at* Dkt. No. 22–1. These regulations were in effect during the time period at issue. While the *CATA* court vacated the 2008 Wage Rule, going forward, in 2013, nothing in the court's decisions purported to vacate the rule retroactively. *See CATA II*, 933 F.Supp.2d 700. Furthermore, Defendant has cited no authority vacating the Interim Final Rule on which the supplemental prevailing wage was based. Indeed, the Northern District of Florida specifically stated that it was not addressing that regulation. *Perez*, Case No. 3:14–cv–682 at 6 n. 8.

benefits and wages" and that individual accepts the offer "by performing the act on which the promise was impliedly or expressly based." *Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452, 454 (1987). Thus, Plaintiffs allegations that Defendant hired them and that they traveled to South Carolina and performed services for Defendant is enough to allege the existence of a contract. However, as Plaintiffs note, "[t]he issue then becomes what the terms of that contract were." (Dkt. No. 22 at 22).

 In such employment contracts, the terms of the contract are the promises made by the employer; the individual accepts those terms by beginning work. *Small v. Springs Indus.,* 357 S.E.2d at 454. Here, Plaintiffs have not alleged that Defendant promised to pay them the prevailing wage. They only allege that Defendant made promises *to the DOL* that it would pay the prevailing wage. The terms of the employment contract consist of what Defendant promised Plaintiffs, not what it promised a third party. Therefore, to the extent that Plaintiff relies on promises made to the DOL, Defendant's motion is granted. *Cf. Teoba v. TruGreen Landcare LLC,* No. 10–CV–6132 CJS JWF, 2013 WL 1560208, at *4 (W.D.N.Y. Apr. 10, 2013) (denying motion to dismiss contract claim by H–2B workers because they alleged "that the defendant explicitly promised *in the employment contracts* to pay plaintiffs the prevailing wage") (emphasis added).[12]

 However, in addition to relying on Defendant's promises to DOL, Plaintiff argues that the H–2B regulations were the law at the time the contract was created, and, therefore, constitute terms of the employment contract. (Dkt. No. 22 at 23). "[I]t is a fundamental rule of contract construction that the law existing at the time and place of the making of a contract is a part of the contract." *Catawba Indian Tribe of S. Carolina v. State,* 372 S.C. 519, 642 S.E.2d 751, 756 (2007); *see also Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n,* 499 U.S. 117, 130, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms."); *Gen. Elec. Co. v. Moretz,* 270 F.2d 780, 787 (4th Cir.1959) (holding that "relevant [federal] statutes and regulations existing at the time a contract is made become a part of it" under Virginia law and "in other jurisdictions throughout the country"). Thus, the Court finds that the law and regulations applicable to the H–2B program at the time were part of the contract. Because these regulations required the payment of the prevailing wage, the Court finds that Plaintiffs have stated a claim, and Defendant's motion to dismiss is denied.

Defendant argues that any such contract fails for lack of consideration because there is no consideration where a party simply promises to do something it is already obligated to do, and Defendant is legally obligated to pay the prevailing wage. Defendant's argument misunderstands this long-standing doctrine of contract law.

 "A promise by a party to do that which it has already legally obligated itself to do is not a valid consideration."

---

**12.** In *Teoba,* plaintiffs alleged that "[a]s part of the recruitment and hiring process, Defendant offered its H–2B workers employment contracts containing, either explicitly or by operation of law, the requirement of federal law that Defendant pay at least the prevailing wage set by [the U.S. Department of Labor] DOL for the job and locale where the H–2B workers would be employed." *Id.* at 177–78.

*City of Spartanburg v. Spartan Villa,* 273 S.C. 1, 253 S.E.2d 501, 503 (1978). In other words, if a party is legally obligated to do something *prior to entering into the contract,* a promise to perform that legal obligation is not consideration for the contract. The doctrine usually arises in the context of a second purported contract where a party is already legally obligated to perform the promise at issue by a prior contract. *See, e.g. Seven Lakes Inv. Grp., Inc. v. Crowe,* 297 S.C. 534, 377 S.E.2d 576, 577 (1989) ("[Defendant's] $10,000 payment did not constitute new consideration since she was already legally bound to pay the note."). However, the doctrine can also arise when state law imposes a prior legal obligation. *See McLeod v. Sandy Island Corp.,* 265 S.C. 1, 216 S.E.2d 746, 750 (1975) (promise to pay child support not consideration because "[a] father is under legal obligation to support his minor child and such obligation remains after a divorce").

▮ Here, Defendant is not under any *prior* obligation to pay Plaintiffs anything and, thus, not "already legally bound" to pay Plaintiffs the prevailing wage. Instead, the H–2B regulations set the minimum consideration that Defendant must offer for this specific type of employment contract. It is a contingent legal obligation, dependant on Defendant entering into employment contracts with H–2B workers. This obligation arose with the contract, and under the authority above, became a term of the contract.

To accept Defendant's argument is to hold that all employment contracts to pay a worker minimum wage for a particular service, lack consideration and are, therefore, not contracts. This is clearly not true. For example, suppose a company offers to pay an individual $7.25 an hour for janitorial services, and the individual accepts. A unilateral employment contract is formed. *See Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452, 454 (1987). The employer has offered consideration in return for the individual's services, namely the payment of $7.25 an hour. This payment of $7.25 an hour does not loose its status as consideration because the FLSA sets a minimum wage of $7.25. That is because the employer is under no obligation to pay the individual anything *prior* to entering the contract. The same is true here with the H–2B prevailing wage.[13]

Defendant next argues that the 2008 H–2B regulations cannot be the basis of Plaintiffs' contract claim because the Northern District of Florida enjoined DOL from enforcing them on March 4, 2015. (Dkt. No. 12 at 20–21; *see also* Dkt. No. 22–1). This claim lacks merit. First, nothing in the *Perez* decision suggests that it is retroactive, and it has no application to the time period at issue. *See Perez v. Perez,* Case No. 3:14–cv–682 (Mar. 4, 2015), *available at* Dkt. No. 22–1. The law in existence *at the time that the contract is formed,* here the 2008 H–2B regulations, is incorporated into the terms of the contract. *Catawba Indian Tribe,* 642 S.E.2d at 756. Second, the 2013 Interim Final Rule, which is the basis of some of Plaintiffs' claims, has never been invalidated by any court. *See Perez,* Case No. 3:14–cv–682 at 6 n. 8 ("[N]othing in the

---

**13.** Defendant relies on *Bojorquez–Moreno v. Shores & Ruark Seafood Co.,* which granted an employer's motion to dismiss a state contract claim at least in part because "[a] party's agreement to do or refrain from doing something that it is already legally obligated to do or refrain from doing is not consider- ation." No. 3:14CV670, 92 F.Supp.3d 459, 468, 2015 WL 1236765, at *8 (E.D.Va. Mar. 17, 2015). The *Bojorquez–Moreno* court did not provide any further analysis or explana- tion, and this Court respectfully disagrees that this doctrine is applicable here.

present Order should be construed as addressing [the 2013] regulation.").

Finally, Defendant argues that there is no private cause of action to enforce the H–2B regulations. (Dkt. No. 12 at 18). While the Court agrees, Plaintiffs are not asserting a private cause of action under the INA or the H–2B regulations. They are asserting a state contract law claim. *See Cordova v. R & A Oysters, Inc.*, No. CIV.A. 14–0462–WS–M, 101 F.Supp.3d 1192, 1199, 2015 WL 1934389, at *6 (S.D.Ala. Apr. 29, 2015) ("The cases on which [defendants] rely stand only for the proposition that workers under the H–2 program have no implied right of action under certain federal laws; they do not state or remotely suggest that there can be no state-law claim for breach of an employment contract with an H–2B worker.").

Therefore, Defendant's motion to dismiss Count III is granted as to Plaintiffs' claims that rely on promises made by Defendant to the DOL but denied as to Plaintiffs' claims based on alleged employment contracts that incorporate applicable law. *See Teoba*, 2013 WL 1560208, at *1 (denying motion to dismiss where plaintiffs alleged that "[a]s part of the recruitment and hiring process, Defendant offered its H–2B workers employment contracts containing, either explicitly *or by operation of law,* the requirement of federal law that Defendant pay at least the prevailing wage set by [the U.S. Department of Labor] DOL for the job and locale where the H–2B workers would be employed") (emphasis added).

### E. Count IV: Third–Party Beneficiary Claims

Plaintiff also pleads, in the alternative, "a third-party beneficiary claim for dam-

ages resulting from the breach of the contracts between the U.S. Department of Labor (DOL) and Defendant." (Dkt. No. 1 at ¶ 101). The Supreme Court addressed the question of whether a third-party beneficiary may sue to enforce a government contract when the statute giving rise to the contract provides no private right of action in *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 131 S.Ct. 1342, 179 L.Ed.2d 457 (2011). There the Court held that where government contracts "simply incorporate statutory obligations and record [a company's] agreement to abide by them," a third-party suit to enforce the agreement "is in essence a suit to enforce the statute itself." *Id.* at 1348.

The Court finds *Astra* applicable here. As in *Astra,* the alleged contracts at issue here [14] are "form agreements" that "contain no negotiable terms." *Id.* at 1348; (*see* Dkt. No. 1–3). These form applications act "as an opt-in mechanism" for the H–2B program. *Astra*, 131 S.Ct. at 1346. The attestations on which Plaintiffs rely simply record an employer's agreement to abide by the applicable law. (*See* Dkt. No. 1–2 at 10–11; *see also* Dkt. No. 1 at ¶ 23). Because Defendant's regulatory and contractual obligations are "one and the same," a third-party beneficiary claim is essentially a private right to enforce the regulatory scheme. *Id.* at 1348. Thus, such a claim is not cognizable. *Id.*

In briefing, Plaintiffs argue that "the agreement at issue contains more than a promise to comply with applicable law." (Dkt. No. 22 at 28). However, their only example of such a promise is Defendant's promise to pay the H–2B prevailing wage. (*Id.*). Plaintiffs have repeatedly alleged and argued that paying the H–2B prevail-

---

**14.** The Court does not decide whether Defendant's applications and the DOL's issuance of temporary labor certifications constitute a contract. The Court assumes, without deciding, such a contract exists.

ing wage is required by the applicable regulations. (Dkt. No. 1 at ¶¶ 21, 23, 96; Dkt. No. 22 at 4–5, 10). Because Plaintiffs have failed to point to any negotiable terms or terms not already required by law, the Court finds *Astra* controlling and grants Defendant's motion to dismiss.

## IV. CONCLUSION

Defendant's partial motion to dismiss, (Dkt. No. 12), is **GRANTED IN PART AND DENIED IN PART.** As to Count I, Defendant's motion is **DENIED.** As to Count II, Defendant's motion is **GRANTED** to the extent Plaintiffs seek payment of the federal minimum wage or payment at the supplemental prevailing wage rate during overtime weeks but is otherwise **DENIED.** As to Count III, Defendant's motion is **GRANTED** to the extent Plaintiffs seek payment of the federal minimum wage or payment at the supplemental prevailing wage rate during overtime weeks and **GRANTED** to the extent that Plaintiffs' claims that rely promises made by Defendant to the DOL, but is otherwise **DENIED.** As to Count IV, Defendant's motion is **GRANTED.**

**AND IT IS SO ORDERED.**